**STATE of Iowa, Appellee,**

v.

**Anthony WEBB, Appellant.**

No. 00–1487.

Supreme Court of Iowa.

July 17, 2002.

Linda Del Gallo, State Appellate Defender and Patricia Reynolds, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, John P. Sarcone, Polk County Attorney and Daniel C. Voogt, Assistant County Attorney, for appellee.

LAVORATO, Chief Justice.

The defendant, Anthony Webb, appeals from his conviction and sentence for possession of a controlled substance (marijuana) in violation of Iowa Code section 124.401(1)(d), failure to affix a drug tax stamp in violation of Iowa Code sections 453B.3 and 453B.12, and child endangerment in violation of Iowa Code section 726.6 (1999). He contends, among other things, that the evidence was insufficient to support these convictions. The court of appeals affirmed the judgment of the district court. On further review, we vacate the judgment of the court of appeals and

reverse the judgment of the district court as to all three convictions and sentences.

Viewing the evidence in the light most favorable toward the State, we think the jury could have found the following facts.

On February 9, 2000, Urbandale police arrived at an apartment complex in response to an anonymous complaint. They came into contact with Jason Stansbury, who was in a vehicle at the time. The officers searched Stansbury's vehicle for a handgun and illegal drugs, but found nothing.

The officers then went to the apartment shared by Stansbury, Crisee Moore, and Webb. Moore gave the officers permission to search the living room area for weapons. One officer saw "in plain sight . . . several pieces of marijuana stems and seeds." The officer asked Moore for consent to search the apartment for drugs, but she denied any further search without a search warrant. The officers secured the apartment and obtained a warrant.

Armed with the warrant, the officers searched the rest of the apartment. The officers found a marijuana-smoking bong in the northwest bedroom. They also found on a scale in a kitchen drawer small pieces of plant material, which later tested positive for marijuana.

Under the bathroom sink off the southwest bedroom (where Moore and Webb slept), the officers found a bag containing an unloaded .44–caliber handgun, five rounds for the gun, and cigarette rolling papers. Partial fingerprints lifted from the gun were inconclusive. None of the other items seized were tested for fingerprints. One officer testified that the gun and bullets found in the bathroom would have been accessible to anyone in the apartment including visitors and Moore's minor son.

A box of plastic sandwich bags were found sitting on the couch in the living room. The officers found a coin purse containing a marijuana pipe in the apartment. In the freezer compartment of the refrigerator, the officers found a plastic container of marijuana and a plastic bag containing a brick of marijuana. The plastic container contained approximately 315 grams (11 ounces) of marijuana. The plastic baggie contained approximately 54.4 grams (2 ounces) of marijuana. No drug tax stamps were affixed to the marijuana.

Moore's child was present in the apartment with Moore when the officers first entered. One officer put the child's age at "older than two," and another put the child's age at six or seven. The child was not Webb's son.

Webb arrived at the apartment several hours after the officers' initial contact with Moore. When Webb arrived, the officers took $336 in cash from him. Webb told the officers he received the money from Moore.

Webb told the officers he was not employed, except for babysitting Moore's son. Webb, however, was not babysitting the child on that day.

We present additional facts as they relate to the issues we discuss.

## I. Issues.

As mentioned, Webb challenges the sufficiency of the evidence to support all three convictions. We consider separately each conviction in light of this challenge.

## II. Scope of Review.

We review challenges to the sufficiency of the evidence supporting a guilty verdict for correction of errors at law. *State v. Heard,* 636 N.W.2d 227, 229 (Iowa 2001). We will uphold a verdict if substantial record evidence supports it. *Id.* Evi-

dence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Id.*

██ We review the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the evidence in the record. *Id.* The court considers all the evidence in the record, not just the evidence that supports the verdict. *Id.*

██ The State must prove every fact necessary to constitute the crime with which the defendant is charged. *State v. Gibbs,* 239 N.W.2d 866, 867 (Iowa 1976). The evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture. *State v. Hamilton,* 309 N.W.2d 471, 479 (Iowa 1981).

### III. The Drug Convictions.

██ The district court instructed the jury that the charges of intent to deliver and failure to affix a drug tax stamp both include the element that the defendant knowingly possessed marijuana. In his motion for judgment of acquittal, Webb argued, as he does here, that there was insufficient evidence to connect him with the drugs. Additionally, he argued that because he did not have exclusive control of the premises, a conviction of the two charges could not be based on his constructive possession of the drugs. Therefore, Webb preserved error on the sufficiency of the evidence issue relating to the drug charges.

The State contends that it can satisfy the knowledge element of both charges by showing Webb maintained or shared exclusive dominion and control over the place where the drugs were found. To support its position, the State relies heavily on our decision in *State v. Simpson,* in which we held that an inference of knowledge and control is warranted when the defendant shares exclusive dominion and control over the place where the drugs are found. 528 N.W.2d 627, 632 (Iowa 1995). The State has apparently overlooked our recent decision in *State v. McDowell,* in which we "signal[ed] the court's return to a proper application of the principles of constructive possession as set forth in *State v. Reeves,* 209 N.W.2d 18 (Iowa 1973)" and "implicitly reject[ed] the erroneous application of those principles made in *State v. Simpson* ...." *McDowell,* 622 N.W.2d 305, 309 (Iowa 2001) (Ternus, J., concurring specially).

### A. Background.

Because the issue here is one of constructive possession, we think it would aid our analysis to discuss several significant cases bearing on that issue.

We begin with *Reeves,* a case in which this court for the first time decided what constitutes "possession" of a drug within the meaning of our controlled substance statute. 209 N.W.2d at 21. The State, we said, had to prove three elements: "(1) the accused exercised dominion and control (i.e., possession) over the contraband, (2) [the accused] had knowledge of the [contraband's] presence, and (3) the accused had knowledge that the material was a narcotic." *Id.*

Relying on precedent from other jurisdictions, the court concluded in *Reeves* that the State need not prove actual possession; proof of constructive possession would be enough. *Id.* at 22. Put another way, the "dominion and control" of the contraband necessary to constitute possession does not mean that the contraband "needs to be found on the [accused's] person." Rather, all that is necessary is that the accused "maintains control or a right to control" the contraband. *Id.* This control of the contraband or the right to control it in the

absence of actual possession *is* constructive possession. *Id.*

In *Reeves,* we outlined the circumstances under which inferences may be used and inferences that are not available to prove constructive possession—the control or right to control the contraband:

> Proof of opportunity of access to a *place* where [contraband is] found will not, without more, support a finding of unlawful possession.
>
> . . . .
>
> [P]ossession may be imputed when the contraband is found in a *place* which is *immediately and exclusively* accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another.
>
> . . . .
>
> If the *premises* on which [the contraband is] found [is] in the *exclusive* possession of the accused, knowledge of [its] presence on such premises coupled with his ability to maintain control over such [contraband] may be inferred. Although no further proof of knowledge by the State is required in cases of *exclusive* possession by the accused the inference of knowledge is rebuttable and not conclusive. *But where the accused has not been in exclusive possession of the premises but only in joint possession, knowledge of the presence of the [contraband] on the premises and the ability to maintain control over [the contraband] by the accused will not be inferred but must be established by proof.* Such proof may consist either of evidence establishing actual knowledge by the accused, or evidence of incriminating statements or circumstances from which a jury might lawfully infer knowledge by the accused of the presence of the [contraband] on the premises.

*Id.* at 22–23 (emphasis added).

In *State v. Rudd,* 454 N.W.2d 570 (Iowa 1990), we retreated from these principles regarding when inferences could be employed to support a finding of constructive possession, i.e., the control or right to control the contraband. In *Rudd,* we approved an instruction that defined constructive possession as follows:

> Constructive possession occurs when the defendant maintains the control or a right to control the place where the controlled substance is found, and *may be inferred when the substance is found in a place which is accessible to the defendant and subjected to her dominion and control, or the joint dominion and control of the defendant and other persons.*

*Id.* at 572 (emphasis added).

In *Simpson,* we approved a similar instruction, relying on our decision in *Rudd. Simpson,* 528 N.W.2d at 631. The dissent in *Simpson* criticized the instruction on two grounds. First, the instruction

> erroneously allowed the jury to find the defendant possessed the marijuana upon proof that the defendant jointly controlled the house in which the marijuana was found. At a minimum, the court should have given the defendant's requested instruction that constructive possession could not be proved by showing that the drugs were found on *premises* over which the defendant had joint dominion and control. Without such an instruction the jury could easily conclude that the "place" where the drugs were found was the house, not some more localized site within the house/premises.
>
> . . . .
>
> If we are true to our holding in *Reeves,* we must agree with the defendant that the court's instruction on constructive possession was wrong. That is because in *Reeves* we held that "where the ac-

cused has *not* been in *exclusive* possession of the premises but only in joint possession, knowledge of the presence of the substances on the premises and the ability to maintain control over them by the accused *will not be inferred* but must be established by proof."

*Id.* at 637 (Ternus, J., dissenting) (citation omitted).

The dissent's second criticism centered on the fact that the challenged instruction told the jury that

constructive possession could be inferred by proof that the drug was found "in a place which is accessible to the defendant" and subject to his sole or joint dominion and control. The original statement of this rule in *Reeves* required proof that the place was "immediately and exclusively accessible" to the defendant. By eliminating the "immediate and exclusive access" requirement, it becomes even more crucial for the jury to understand that mere proof of joint control of the premises is not sufficient to infer knowledge and control of drugs found on the premises.

*Id.* at 637–38 (citations omitted).

The dissent noted that the *Reeves* principles

strike a balance between two competing considerations. We want to convict persons guilty of drug offenses even though they are not caught "red-handed" with the drugs on their person. However, we also want to protect innocent bystanders from being convicted for drug offenses merely because they were in the wrong place at the wrong time.

*Id.* at 636 (citations omitted).

We came full-circle in *McDowell*, returning to the principles of constructive possession announced in *Reeves*. *McDowell*, 622 N.W.2d at 308. The issue was whether there was sufficient evidence to show that the defendant was in immediate possession and control of a firearm found in a purse in a bedroom where on a previous occasion the defendant had made two sales of a controlled substance to a confidential informant. *Id.* at 306–07. The defendant urged that notwithstanding the proximity of the firearm to his person, the State failed to prove he knew of the weapon's existence. *Id.* at 308. The State contended that the jury could infer the defendant's knowledge from the surrounding facts. *Id.*

To resolve the issue, we found helpful our pronouncements in *Reeves* regarding inferences that could and could not be used to establish constructive possession of controlled substances. *Id.* We first noted that "[p]roof of opportunity of access to a place where narcotics are found will not, without more, support a finding of unlawful possession." *Id.* (quoting *Reeves*, 209 N.W.2d at 22).

We then quoted with approval the following from *Reeves*:

If the premises on which such substances are found are in the exclusive possession of the accused, knowledge of their presence on such premises coupled with his ability to maintain control over such substances may be inferred. Although no further proof of knowledge by the State is required in cases of exclusive possession by the accused the inference of knowledge is rebuttable and not conclusive. *But where the accused has not been in exclusive possession of the premises but only · in joint possession, knowledge of the presence of the substances on the premises and the ability to maintain control over them by the accused will not be inferred but must be established by proof. Such proof may consist either of evidence establishing actual knowledge by the accused, or evidence of incriminating statements or*

*circumstances from which a jury might lawfully infer knowledge by the accused of the presence of the substances on the premises.*

*Id.* (quoting *Reeves,* 209 N.W.2d at 23 (emphasis added)).

In concluding the evidence was insufficient to establish the requisite knowledge according to this latter principle, we said in *McDowell:*

> The circumstantial evidence on which the State relies to establish defendant's knowledge of the firearm's presence all pertains to his frequent presence in Scott's home and his use of the northwest bedroom to sleep and conduct drug transactions. There is no evidence that the defendant ever accessed the purse belonging to Scott in which the firearm was contained. To the extent that this evidence shows some dominion and control by defendant over various portions of Scott's residence, that dominion or control was certainly not exclusive. There is no evidence of the type credited in the *Reeves* case to establish his knowledge of or control over the firearm in Scott's purse.

*Id.*

We implicitly recognized in *McDowell* that the principles of constructive possession set out in *Reeves* are good law in this jurisdiction. We overrule any holding in *Rudd* and *Simpson* to the contrary.

■ The existence of constructive possession turns on the peculiar facts of each case. *State v. Harris,* 647 So.2d 337, 339 (La.1994). A number of factors may support a finding that a defendant had knowledge of the presence of drugs and the right to exercise control over them as well as access and control of the place and premises where the drugs are found. Such factors include incriminating statements made by the defendant, incrimina-

ting actions of the defendant upon the police's discovery of drugs among or near the defendant's personal belongings, the defendant's fingerprints on the packages containing the drugs, and any other circumstances linking the defendant to the drugs. *See* Emile F. Short, Annotation, *Conviction of Possession of Illicit Drugs Found in Premises of Which Defendant was in Nonexclusive Possession,* 56 A.L.R.3d 948, 1974 WL 35135 (1974).

## B. Analysis.

■ With these principles of constructive possession in mind, we turn to the record evidence in this case. The evidence shows that Webb, two other adults, and a child lived on the premises where the controlled substances were found. Webb was therefore not in exclusive possession of such premises. Because Webb was not in exclusive possession of the premises, the jury was not allowed to infer from his joint control of the premises knowledge, if any, of the presence of the controlled substances and the ability to maintain control over them. Rather, the State had the burden to prove such knowledge and ability by other evidence.

■ The record reveals that the State failed to meet its burden of proof. Webb was not on the premises when the officers initially entered and found the controlled substances. He arrived several hours later. The State presented no evidence about when he was last on the premises before the search. There were no fingerprints linking Webb to the controlled substances, gun, bullets, or drug paraphernalia. None of these items were found in a place that was immediately and exclusively accessible to Webb and subject to his dominion and control. Nor were any of these items found near or among Webb's personal belongings. There was no evidence as to how long these items were on

the premises. The officers found no drugs on Webb's person. And there was no evidence that he was under the influence of any drugs.

A similar lack of evidence resulted in reversal of drug convictions in several cases where the defendant's possession of the premises was nonexclusive. *See, e.g., Osborne v. State,* 278 Ark. 45, 643 S.W.2d 251, 254 (1982) (defendant's conviction for possession of phentermine and marijuana reversed where (1) such drugs were found in bedroom of residence he shared with his wife, (2) four other persons were present in house when the drugs were found, (3) there was no testimony as to in whose bedroom drugs were found, (4) some drugs were found in suitcase in hall, (5) there was no indication how long marijuana in living room had been there, and (6) defendant was not at home when the drugs were found); *Gaynus v. State,* 380 So.2d 1174, 1175 (Fla.Dist.Ct.App.1980) (state failed to show defendant's possession of heroin, cocaine, and paraphernalia where drugs were discovered in bedroom closet and in closed briefcase in kitchen and paraphernalia was found in kitchen cupboards and in pantry of residence jointly occupied by defendant and at least three others; additionally, there was no evidence that (1) defendant had exclusive possession of any portion of the premises where the drugs or paraphernalia were discovered, (2) linked defendant to the briefcase, (3) showed defendant had actual knowledge of contraband, or (4) showed incriminating statements or circumstances from which the jury could have inferred such knowledge); *State v. Davis,* 228 N.W.2d 67, 69, 73 (Iowa 1975) (instruction that permitted jury to consider inference of defendant's knowledge of presence of marijuana and dominion and control over it held improper where (1) whiskey bottle containing marijuana cigarette butts was seized from drawer in dining room of multilevel apartment, (2) apartment was occupied by defendant and roommate, and (3) at time of seizure, at least six people were present); *State v. Harvey,* 463 So.2d 706, 708 (La.Ct.App.1985) (defendant's conviction for possession with intent to deliver pentazocine reversed where defendant and five others were in living room of her mother's house—where defendant may have lived—when it was searched and drugs were found on bedroom dresser and in kitchen; held that the evidence may have proved defendant was aware of presence of drugs and of distribution activities, but did not prove she exercised any dominion and control over the drugs); *State v. Haynes,* 25 Ohio St.2d 264, 267 N.E.2d 787, 788, 791 (1971) (evidence held insufficient to support defendant's conviction of possession for sale of narcotics found in the living room, dining room, and kitchen of a house that he occupied with three other persons); *Commonwealth v. Hicks,* 243 Pa.Super. 171, 364 A.2d 505, 507 (1976) (defendant's conviction for possession of controlled substance reversed where (1) the substance was found in a bedroom, (2) defendant was not at home when the police arrived to conduct the search, (3) at least two other people had access to the house, and (4) there was no evidence as to when the defendant was last in the house before the search and as to which room he inhabited).

When he arrived on the scene, Webb made no incriminating statements. Nor did he exhibit any suspicious behavior in connection with the discovery of the controlled substances, drug paraphernalia, gun, or bullets on the premises. *See Gaynus,* 380 So.2d at 1175. The only evidence on this point that the State introduced was the $336 in cash the officers found on Webb and his statement that Moore gave him the money. This evidence, we think, is too tenuous and speculative to support an inference of constructive possession.

The State did introduce evidence of Webb's drug activities nine months earlier. The previous incident involved the seizure of marijuana, drug paraphernalia, and a gun from the same apartment shared then by Webb and Moore. Webb pled guilty to possession with intent to deliver. The State introduced this evidence to show Webb's knowledge of the location and nature of the narcotics. *See* Iowa R. Evid. 5.404(b) (formerly rule 404(b)) (evidence of prior bad acts is admissible to prove knowledge). According to the State, "this evidence simply asks the jury to infer, that if the state has proven possession, the intent held by the defendant was to deliver."

We think this evidence is likewise insufficient to support an inference of constructive possession, that is, knowledge of the presence of the controlled substances on the premises and the ability to maintain control over them. The fact that Webb knew marijuana was in the apartment on a previous occasion and he had the ability to maintain control of it is irrelevant as to whether or not he knew it was present on the date in question and irrelevant on whether he had the ability to maintain control of it on that date. *See United States v. Eggleston,* 165 F.3d 624, 625–26 (8th Cir.1999) (holding that, in prosecution of driver for possession of crack which he maintained belonged to his passenger, evidence that six years previously defendant had been arrested with thirty-nine individually wrapped packages of cocaine and scale in his car was not relevant to prove knowledge of presence of crack in the trunk of his car). And even assuming Webb knew the marijuana was on the premises, that knowledge alone was not enough to establish constructive possession; the evidence must also support an inference that he had the ability to maintain control of the controlled substances. *Reeves,* 209 N.W.2d at 22; *Harvey,* 463

So.2d at 708. Because two other adults shared occupancy of the residence with Webb when the search occurred, proof other than the shared occupancy was necessary to establish such control. As we said, such proof was lacking.

Additionally, we think the prior incident was too remote to support an inference of constructive possession.

> When the fact or facts proposed to be established as a foundation from which indirect evidence may be drawn, by way of *inference,* have not a visible, plain, or necessary connection with the proposition eventually to be proved, such evidence is rejected for "remoteness."

*Black's Law Dictionary* 1295 (6th ed.1990) (emphasis added). Here the proposition eventually to be proved is Webb's knowledge of the presence of controlled substances on the premises and his ability to maintain control of such substances. The facts forming the foundation for drawing the inference of such knowledge and ability, i.e. the prior drug incident and conviction, do not have a "visible, plain, or necessary connection" with that knowledge and ability.

We think the evidence viewed in the light most favorable to the State fell short of generating a jury question on the issue of constructive possession. The district court should therefore have sustained Webb's motion for judgment of acquittal as to the two drug charges. It was reversible error not to do so.

## IV. The Child Endangerment Conviction.

To prove Webb guilty of child endangerment, the State had to prove (1) Webb was the parent, guardian or person having custody or control of a child on or about the date in question, (2) the child was under fourteen years of age, and (3)

Webb knowingly acted in a manner creating a substantial risk to the child's physical, mental, or emotional health or safety. *See* Iowa Code § 726.6(1).

Webb contends the State failed to prove element one. In his motion for judgment of acquittal, Webb argued the evidence was insufficient to establish that on the date in question he was the parent, guardian, or person having custody or control of Moore's child. He pointed to testimony in the record that he was not the biological father of the child. He also noted there was no evidence that he was a guardian of the child or that he had custody of the child. On the element of control, Webb argued that he "was not present at the apartment when the drugs were found. He was not babysitting that day. He had no supervisory responsibilities of that child." Webb makes the same arguments here.

Although the State does not contend that Webb was the parent, guardian, or person having custody of the child, it does contend that Webb had control over the child because he was the child's babysitter. And, contrary to Webb's contention, the State asserts "[t]he fact that [Webb] may not have been present on the date of the arrest is not determinative. The undisputed testimony of the officers established that [Webb] earned money by babysitting Moore's child."

Because the statute does not define "control," we refer to its ordinary and common meaning. *IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001). In *State v. Johnson*, by way of dictum we defined the term "control" in section 726.6(1) as referring "to the state of having restricting or governing power over someone." 528 N.W.2d 638, 641 (Iowa 1995) (citing Black's Law Dictionary 298 (5th ed.1979)).

If Webb were babysitting at the time the drugs were found, we could easily say that there was sufficient evidence to generate a jury question on whether the child was under Webb's control. This is because at that moment he would have restricting or governing power over the child. However, the evidence shows Webb was not babysitting the child at the time in question.

The evidence does not reveal just what kind of relationship Webb had with the child. All the evidence tells us is that he babysat the child. So whatever control Webb had over the child, he had in the context of his role as a babysitter. Given this limited role, we can hardly say that Webb had "restricting or governing power" over the child at the time in question.

Viewing the evidence in the light most favorable to the State, we conclude there was not sufficient evidence to generate a jury question on whether Webb at the time in question had control over the child. The district court should therefore have sustained Webb's motion for judgment of acquittal on the child endangerment charge. Its failure to do so constituted reversible error.

## V. Disposition.

The evidence was insufficient to support the convictions for the two drug charges and the child endangerment charge. Therefore, we vacate the decision of the court of appeals and reverse the district court's judgment of conviction and sentence on all three charges.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGEMENT REVERSED.**

All justices concur except CADY, J., who dissents.

CADY, Justice (dissenting).

I respectfully dissent.

I agree with the interpretation of our legal principles on constructive possession as outlined by the majority. Essentially, our law provides that the elements of knowledge and control cannot be inferred from joint possession of the premise. *Reeves*, 209 N.W.2d at 23. I have no disagreement with this law. Instead, my disagreement is with its application to the jury verdict in this case.

If the State had based its prosecution of the offense of possession of marijuana solely on an inference that Webb possessed the drugs because he resided in the apartment with two other adults, I would have no dispute with the conclusion drawn by the majority. No person should be guilty by association. However, this case is not based on such an inference. Instead, there was other evidence from which the jury could have reasonably concluded Webb had knowledge and control of the drugs. This other evidence included the amount and extent of the drugs and drug paraphernalia around the apartment, and the fact that Webb was unemployed but possessed a large amount of cash. The cash primarily consisted of $20 bills, and testimony revealed this was indicative of proceeds of illegal drug sales. Additionally, there was evidence Webb was found guilty of possession of marijuana with intent to deliver from the same apartment only nine months earlier. We specifically recognize this is the type of evidence that can be used to show a person's knowledge of the presence of drugs and the intent to sell drugs. Iowa R. Evid. 5.404(*b*). Similarly, this evidence should logically be considered to show possession and control. Rule 5.404(*b*) permits evidence of other crimes to be admitted "for other purposes," not just those specific purposes listed in the rule. *Id.* (Evidence may "be admissible for other purposes, *such as* . . . ." (Emphasis added.)). Although none of this evidence alone may support a finding of possession in this case, taken as a whole, it is enough to support the jury's finding.

A verdict of possession of marijuana does not offend our law against an inference of possession based on joint occupancy as long as there is other evidence to support a finding of possession. *See Reeves*, 209 N.W.2d at 23. Although the evidence of possession was not overwhelming in this case, I would conclude there was sufficient evidence under our standard of review of jury verdicts to support the finding of guilt.