# IN THE COURT OF APPEALS OF IOWA

No. 15-0060
Filed April 6, 2016

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**JEFFREY WAYNE MILLER,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Tama County, Ian K. Thornhill,
Judge.


　　　Jeffrey Wayne Miller appeals his conviction of lascivious conduct with a
minor, alleging the evidence was insufficient to convict him and his trial counsel
was ineffective. **REVERSED AND REMANDED.**


　　　Mark C. Smith, State Appellate Defender, and Theresa R. Wilson,
Assistant Appellate Defender, for appellant.

　　　Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant
Attorney General, for appellee.


　　　Considered by Vaitheswaran, P.J., Doyle, J., and Scott, S.J.*

　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**SCOTT, Senior Judge.**

Jeffrey Wayne Miller appeals his conviction of lascivious conduct with a minor, a serious misdemeanor, in violation of Iowa Code section 709.14 (2013). Miller contends the State failed its burden to establish he was in a position of authority over the minor or that he forced, persuaded, or coerced the minor to disrobe. Miller further contends the trial court erred in admitting certain hearsay evidence. Insofar as error was not preserved on the above matters, Miller asserts his trial counsel was ineffective.

## I.    Background Facts[1] and Proceedings

On July 23, 2014, Miller, a married, thirty-seven-year-old man and father of two, was seen with D.P., a seventeen-year-old girl, at a lake. The eye-witnesses, D.P.'s younger brother and the brother's friend, observed Miller and D.P. standing close together and kissing and D.P.'s pants unbuttoned. D.P.'s hands were on her pants; Miller's hands were on the wall behind D.P. D.P.'s brother yelled at Miller and D.P., at which point D.P. pulled up her pants and buckled them.

Miller drove away in his vehicle, but D.P.'s brother and the friend caught up with Miller and called the police. When a responding police officer questioned Miller about his activities at the lake, Miller told the officer he had been showing

---

[1] We view the evidence in the light most favorable to the State. *See State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014) ("In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." (quoting *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012)).

his vehicle to a potential buyer from Craigslist. Miller denied meeting a female at the lake. The same officer also spoke with D.P.

Miller and D.P. met through their mutual employment at Menards. Initially, Miller, an assistant manager, directly supervised D.P., an hourly employee. The general manager of Menards testified at trial that, following certain allegations involving Miller and D.P., Miller was reassigned to a different managerial position in the same store. One such report came directly from D.P.'s mother. D.P.'s mother indicated Miller was texting and calling D.P. at all hours of the night. Miller's reassignment, which predated the events on July 23, removed Miller from any direct supervision over D.P., but Miller retained general managerial authority over D.P., along with all other hourly employees.

D.P. also testified at trial. She denied being in any formal relationship with Miller and affirmatively stated she initiated the increase in her interaction with Miller. She testified she had kissed Miller and she had unzipped her own pants on the day in question. D.P. denied that Miller had promised to leave his wife for her or otherwise stated they would have a life together. She further denied that Miller had asked her to, or even hinted that she should, unzip her pants.

D.P. admitted her testimony at trial was inconsistent with the information she had previously given the investigating officer. She indicated her testimony at trial was the accurate recitation of the facts, that she had felt harassed by and scared of the officer, and that she told the officer what he wanted to hear to make him leave her alone. Following D.P.'s testimony, the trial court allowed the State to play three portions of D.P.'s recorded statement to the officer for impeachment purposes only. At the close of evidence, Miller moved for judgment of acquittal,

alleging, *inter alia*, there was insufficient evidence to prove Miller forced, persuaded, or coerced D.P. into disrobing. The trial court denied Miller's motion.

On October 21, 2014, a jury found Miller guilty of lascivious conduct with a minor. Miller filed a motion for new trial in which he, amongst other objections, renewed his challenge regarding the sufficiency of the evidence presented as to force, persuasion, and coercion. The trial court denied the motion. Miller appealed.

## II.      Standard of Review and Analysis

In his appeal, Miller contends the State failed to prove he was in a position of authority over D.P. or that he forced, persuaded, or coerced her to disrobe. Miller further argues the trial court erred in admitting for impeachment purposes portions of the police officer's recorded interview of D.P. Insofar as error was not preserved on the above matters, Miller asserts his trial counsel was ineffective.

We review Miller's sufficiency-of-the-evidence claim for correction of errors at law. *See State v. Vance*, 790 N.W.2d 775, 783 (Iowa 2010). "We will sustain the jury's verdict if it is supported by substantial evidence." *Id.* "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* (quoting *State v. Jorgensen*, 758 N.W.2d 830, 834 (Iowa 2008)). Direct and circumstantial evidence are equally probative. *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011).

To establish the charge of lascivious conduct with a minor, the State must show (1) Miller was over eighteen years old; (2) Miller was in a position of authority over the minor; (3) D.P. was under the age of eighteen; (4) Miller forced, persuaded, or coerced D.P. to disrobe or partially disrobe; and (5) Miller

did so for the purpose of arousing or satisfying the sexual desires of either participant. *See* Iowa Code § 709.14 ("It is unlawful for a person over eighteen years of age who is in a position of authority over a minor to force, persuade, or coerce a minor, with or without consent, to disrobe or partially disrobe for the purpose of arousing or satisfying the sexual desires of either of them."); *see also, e.g.*, *Meyers*, 799 N.W.2d at 147.

At trial, with regard to the fourth element, the State pursued only a theory of coercion or persuasion. Upon appeal, though the State does not concede the coercion element, it admits persuasion is the strongest argument and summarily maintains the coercion theory by stating "even if the jury should have believed D.P.'s testimony that she pulled down her own pants and that she did so voluntarily, that still would not preclude a conviction on the basis of the 'persuade' alternative." The State then argues the persuasion element based upon two theories: (1) persuasion by promise and (2) persuasion by seduction.[2]

Upon review of the record, however, there is no direct evidence that Miller made any promise to D.P. To the contrary, the only evidence regarding a promise is D.P.'s explicit disclaimer that any promise was made.

> [PROSECUTOR]: Did Mr. Miller ever tell you he was planning on leaving his wife for you?
> . . . .
> [D.P.]: No.

---

[2] The Iowa Code does not define "persuade." Both parties cite generally accepted dictionary definitions, *see, e.g.*, *Persuade*, Black's Law Dictionary (6th ed. 1990) (defining "persuade" as "[t]o induce one by argument, entreaty or expostulation into a determination, decision, conclusion, belief or the like; to win over by an appeal to one's reason and feelings, as into doing or believing something"); Webster's Third Int'l Dictionary (1981) (defining "persuade" as "to win over by an appeal to one's reason and feelings (as into doing or believing something)"), and do not otherwise dispute the meaning of the term.

[PROSECUTOR]: Did Mr. Miller ever tell you that the two of you were going to have a life together? [D.P.]: No.

The State notes that this testimony is contrary to the information she provided the investigating police officer. At trial, the court allowed the State to use recorded segments of that interview for impeachment purposes only. While D.P.'s prior inconsistent statements may call into question the veracity of her testimony at trial, they do not serve as an evidentiary basis to establish that a promise was made. *See State v. Belken*, 633 N.W.2d 786, 794 (Iowa 2001) ("[T]he State may use the impeachment evidence only for the purpose of undermining the witness' credibility, and not as substantive evidence.").

In light of this lack of direct evidence, the State vaguely argues there must have been "something else" that convinced D.P. to engage in this type of conduct with a married man and father of two children. The State references only the following line of questioning from the trial record in support of this argument:

[PROSECUTOR]: Are you still seeing Mr. Miller? [D.P.]: No.
[PROSECUTOR]: Still talking to him? [D.P.]: No.
[PROSECUTOR]: If you weren't caught at Union Grove, would you still be?
[DEFENSE COUNSEL]: Objection. Relevance.
THE COURT: How is that relevant?
[PROSECUTOR]: Finalization of coercion, Your Honor.
THE COURT: The objection is overruled. You can answer the question if you have an answer.
[D.P.]: I don't know.
[PROSECUTOR]: And this is despite him being married with kids? [D.P.]: Yes
[PROSECUTOR]: You're okay with that? [D.P.]: Yes
[PROSECUTOR]: And you would have been okay with that had you not been caught? [D.P.]: I don't know.

The State concludes that D.P.'s responses of "I don't know" to the State's requests that she speculate about her possible future actions and feelings

somehow provides a basis to infer a promise must have been made by Miller—specifically, he must have promised D.P. he would leave his wife for her. But "[i]nferences that do no more 'than create speculation, suspicion, or conjecture' do not create a fair inference of guilt." *State v. Truesdell*, 679 N.W.2d 611, 618 (Iowa 2004) (quoting *State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002)). It is equally reasonable to infer that D.P. responded thusly because she was not certain what her future actions and feelings would have been. *Id.* ("[W]hen two reasonable inferences can be drawn from a piece of evidence, we believe such evidence only gives rise to a suspicion, and, without additional evidence, is insufficient to support guilt."). There is simply insufficient evidence—direct or otherwise—to support a reasonable inference that any promise was made.

The State also contends there is sufficient evidence to establish Miller persuaded D.P. to disrobe by seduction. The State relies upon the following two facts presented at trial: (1) Miller texted and called D.P. at all times of the night, and (2) at the time of the alleged lascivious conduct, Miller's hands were on the wall behind D.P creating a "sexually charged" situation. The mere fact the parties communicated by text and phone does not, by itself, provide sufficient evidence of persuasion. Neither the content of the calls nor copies of the text messages were entered into evidence. The State's reliance on the placement of Miller's hands on the wall is equally insufficient. Miller's hands were not positioned upon D.P.'s pants or anywhere else upon her person; they were placed behind her. The State cannot employ certain elements of the crime—the fact that D.P., a minor, was in a state of disrobe and that this state of undress was for the sexual gratification of the parties—to establish other necessary

elements of the crime—that Miller actually forced, persuaded, or coerced D.P. to do so.

Taken as a whole, there is insufficient evidence to support that Miller forced, persuaded, or coerced D.P. to disrobe. Because the State failed to establish sufficient evidence to support this element of the crime, we need not address Miller's remaining arguments. We conclude the district court erred in denying Miller's motion for judgment of acquittal, and we reverse Miller's conviction and remand for dismissal of the charge.

**REVERSED AND REMANDED.**