**IN THE COURT OF APPEALS OF IOWA**

No. 21-1405
Filed January 11, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICHAEL PAUL EATON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Margaret L.

Lingreen, Judge.

        The defendant appeals his conviction for escape.  **AFFIRMED.**

        Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.

        Considered by Vaitheswaran, P.J., Tabor, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**BLANE, Senior Judge.**

Michael Paul Eaton appeals his conviction for escape. He contends the district court should have given a different instruction defining arrest, and the verdict was not supported by substantial evidence that he was under arrest for a felony or in the custody of a public officer. Because we find the court did not err in its arrest instruction and substantial evidence supports the conviction, we affirm.

## I. FACTS AND PRIOR PROCEEDINGS.

Sheriff Deputy Chad Chase was patrolling in Waterloo when he saw a driver in a white Charger cover his face while Chase drove by. He followed and determined the vehicle belonged to a person whose son, Eaton, had an active warrant for his arrest because of a probation violation on a felony conviction. He confirmed the photograph of Eaton matched the person he saw trying to hide his face in the Charger. Eaton's Charger was stopped in the small parking lot of a collectibles shop and, after circling a few times, Chase pulled in after him, blocking the entrance with his patrol vehicle.

Chase testified he exited his vehicle as Eaton was walking toward the shop. He said, "Michael, stop," and Eaton changed direction and walked toward the back of the building. Chase pulled out his taser and followed Eaton behind the building. Eaton told Chase that he was "not Michael." Chase said he would shoot if he did not stop. At the point of his taser, Chase walked Eaton backed to the Charger and had him sit in the front seat with the door open, which he "figured . . . was the safest spot at that point." Eaton's girlfriend, Heather Glaspie, was in the passenger seat of the Charger, and Chase asked for her identification. Standing so the car door remained open, Chase testified Eaton "was detained at that point. He was not

going to leave." While Chase intended to place Eaton in handcuffs, he wanted to wait for another officer to arrive to do so safely.

Radioing with dispatch, Chase took a few steps toward the back of the car to get the license plate number. In that short time, Eaton closed and locked the driver door. The window was about half down, and Chase began "yelling through the window, telling him to unlock the door, open the door." But Eaton put the Charger in reverse and backed out of his parking spot while Chase yelled at him to stop. Chase stood right outside the driver's door, pointed his taser at Eaton, threatened to shoot him, and yelled at him to stop and turn the car off. When Eaton did not comply, Chase shot him with the taser, which caused Eaton to "stomp on the gas," reversing and crashing into Chase's patrol vehicle. The taser stopped working after a few seconds. Eaton then put the car in drive and pulled forward into the parking lot but had no space to exit. Chase followed and shot the taser again but missed this time. Eaton quickly reversed, driving over the lawn to get out of the parking lot. Chase followed, this time pointing his gun. Glaspie was screaming from the passenger seat "don't shoot." Chase had to jump out of the way as Eaton then drove off. Video of most of the event was captured on Chase's dashboard camera, but no audio of the incident was recorded. The next day, officers located the Charger with a broken taillight in a garage and Eaton hiding in Glaspie's apartment under a pile of clothing. taser wires were found on the floor of the Charger.

At trial, Glaspie testified both she and Eaton knew he was wanted on the warrant. She was waiting in the Charger outside the shop and saw Chase circling the parking lot. She called Eaton, who was inside the shop, and told him about it,

which is when he came out. When asked whether she believed Eaton was "free to leave that area," Glaspie testified, "He was obviously being under—put under arrest for an officer to stop, and he had a warrant . . . ." Another witness from inside the collectibles shop testified Eaton received a phone call from someone labeled "Heather" who said, "cops have gone by a couple times, that [Eaton] needed to get out of there."

The jury found Eaton guilty of escape as a habitual offender,[1] in violation of Iowa Code section 719.4(1) (2020). Eaton appeals.

## II. SCOPE AND STANDARD OF REVIEW.

We review challenges to jury instructions for error of law. *State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022). We review a sufficiency-of-the-evidence challenge for the correction of legal error. *State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021). "We will affirm the jury's verdict when the verdict is supported by substantial evidence." *Id.* "Evidence is substantial when the quantum and quality of evidence is sufficient to 'convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Webb*, 648 N.W.2d 72, 75–76 (Iowa 2002)). We consider "the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Id.*

---

[1] The jury also found Eaton guilty of driving while barred and the lesser-included offense of interference with official acts resulting in bodily injury but acquitted him of second-degree criminal mischief and assault on a peace officer with a dangerous weapon.

## III. ANALYSIS.

### A. Jury Instruction on "Arrest"

The conviction for escape from custody required the jury to find all of the following elements:

> 1. . . . [Eaton] was arrested for a felony.
> 2. By reason of the arrest, [Eaton] was in the custody of a public officer.
> 3. [Eaton] intentionally escaped from the custody of the public officer without the permission of the public officer.

Under Iowa Code, an "[a]rrest is the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody." Iowa Code § 804.5. The court also gave jurors the following instruction on arrest:

> No formal announcement is required for a law enforcement encounter to constitute an arrest, as long as the person making the arrest sufficiently conveys, either through words or conduct, the intent to perform an arrest.
> While formal words are not required, in order for a law enforcement encounter to constitute an arrest, what a suspect is told or not told about his arrest status is a factor to be considered when determining whether an arrest has occurred.
> An escape involves departure from actual custody. Actual custody refers to physical restraint, meaning detention, confinement or imprisonment.

The trial court must instruct the jury "as to the law applicable to all material issues in the case." *State v. Becker*, 818 N.W.2d 135, 141 (Iowa 2012), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). To that end, the court must give an instruction "if it correctly states the applicable law and is not embodied in other instructions." *State v. Benson*, 919 N.W.2d 237, 246–47 (Iowa 2018) (citation omitted). Here, Eaton contends the court erred because arrest should "include such standards as handcuffing and

booking."[2]  The district court denied that request, pointing to case law stating

handcuffs and booking are unnecessary for arrest and concluding "it would be

more confusing to include those references when there's been no evidence, no

discussion, about those procedures having been employed or attempted in this

case."  The court relied on two cases.  In *State v. Wing*, the supreme court found:

> [N]ot all seizures by law enforcement officers must meet such strict
> conditions [as under Iowa Code section 804.14] to constitute an
> arrest.  No formal announcement is required, as long as the person
> making the arrest sufficiently conveys, either through words or
> conduct, the intent to perform an arrest.  While formal words are not
> required, what a suspect is told or not told about his arrest status is
> a factor to be considered when determining whether an arrest has
> occurred.  We also consider whether a person has been handcuffed
> or booked, but neither of these factors is determinative.

791 N.W.2d 243, 248 (Iowa 2010) (cleaned up for readability).  Thus, handcuffing

and booking are factors to consider when determining a person has been arrested

but they are neither determinative nor necessary.  In addition, *Wing* determined

when an arrest occurred for the purposes of running the speedy indictment

---

[2] Eaton points to the statutory requirements for the "[m]anner of making arrest[s]" based on a warrant arrest under Iowa Code section 804.14:

> 1. A person making an arrest must inform the person to be arrested of the intention to arrest the person, the reason for arrest, and that the person making the arrest is a peace officer, if such be the case, and require the person being arrested to submit to the person's custody, except when the person to be arrested is actually engaged in the commission of or attempt to commit an offense, or escapes, so that there is no time or opportunity to do so.
>
> 2. . . . If the officer does not have the warrant in the officer's possession at the time of arrest, the officer shall inform the person being arrested of the fact that a warrant has been issued.

Eaton argues he was not under arrest because he was never advised that Chase was executing an arrest warrant.  We do not see where Eaton made this argument below, so we need not address it.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).  But also, the requirement that the officer give certain information does not apply "when the person to be arrested . . . escapes, so that there is no time or opportunity to do so."  Iowa Code § 804.14(1).

deadline, not for the purpose of an escape charge. *Id.* at 253; *see also State v. Schmitt*, 290 N.W.2d 24 (Iowa 1980) (finding arrest for the purposes of speedy indictment deadline ran from when officer held escaped defendant at gunpoint and handcuffed him and brought him to police station).

As Eaton notes, *Wing* was overruled by *State v. Williams*, where the supreme court held defendants are not arrested for the purposes of speedy indictment until they are taken before a magistrate for initial appearance. 895 N.W.2d 856, 858 (Iowa 2017). Eaton reads *Williams* as emphasizing "that the process of arrest does not end with the requirements of Iowa Code section 804.14 for the manner of arrest on the scene, but with the person being taken before a magistrate without unnecessary delay." He faults the district court for "relying on outdated law." But *Williams* and its predecessors zero in on when an arrest triggers the speedy indictment rule. The end there is to "relieve an accused of the anxiety associated with the suspension of a prosecution, provide for the reasonably prompt administration of justice, prevent the loss of evidence, and maintain a fair process." *State v. Penn-Kennedy*, 862 N.W.2d 384, 387 (Iowa 2015) (cleaned up for readability). The offense of escape does not implicate those interests, so *Williams* is limited in its relevance here. And we do not think either the legislature or our supreme court intended to say the offense of escape is impossible until the defendant has had an initial appearance.

Turning back to what Eaton requested: the inclusion of handcuffing and booking in the instruction on arrest. Jury instructions must "'convey[] the applicable law in such a way that the jury ha[d] a clear understanding of the issues' before it." *Benson*, 919 N.W.2d at 245 (quoting *Rivera v. Woodward Res. Ctr.*, 865

N.W.2d 887, 892 (Iowa 2015)). We think the arrest instruction conveyed a clear understanding of the arrest issue. The jury was free to determine from the instructions and the evidence presented whether Eaton was under arrest during his interaction with Deputy Chase. And we agree with the district court that specifically calling the jury to consider whether Eaton was handcuffed or booked into jail would confuse the issues because neither is necessary and no facts were presented to make those factors relevant here. We find no error in the court giving this instruction.

### B. Sufficiency of the evidence of escape

Eaton challenges the sufficiency of the evidence of his escape conviction. He contends the State failed to establish that he was arrested or that he escaped from custody. Again, the Iowa Code defines an arrest as "the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody." Iowa Code § 804.5. The jury instructions say no formal announcement of arrest is required so long as the arrest is conveyed through words or conduct. What the officer tells the defendant contributes to determining whether an arrest has occurred.

Here, the evidence shows Eaton, Glaspie, and Chase all knew Eaton had a warrant out for his arrest. Eaton had told Glaspie, and Glaspie warned Eaton to get out of the shop when she saw Chase's patrol vehicle circling, knowing Eaton could be arrested on the open warrant. When Chase stepped out of his patrol car and Eaton changed directions toward the back of the building, a reasonable jury could infer that Eaton knew he was about to be arrested on the warrant. Eaton also tried to pretend he was someone else when Chase first approached him,

protesting he was not "Michael." Chase testified he told Eaton there was a warrant for his arrest, pointed his taser at him, and commanded him to return to his car, applying the restraint necessary for taking a person into custody. Eaton submitted to Chase's commands because he did go back to his car as instructed. *See State v. Rains*, 574 N.W.2d 904, 910 (Iowa 1998). At the car, Chase would not let Eaton close his car door but constrained him to remain seated with the door open until he could be safely placed in handcuffs. Because everyone understood Chase was acting on the authority of an arrest warrant, a reasonable jury could conclude the circumstances demonstrated Eaton was under arrest. Even if that degree of restraint exercised because of an active arrest warrant does not constitute an arrest, what happened after Eaton shut the door and turned on the car showed Chase's intent to retain custody of Eaton: Chase's repeated commands for Eaton to turn off the vehicle and stop, pointing his taser, shooting his taser, and then pointing his gun at Eaton, were all words and conduct showing Chase's arrest of Eaton and intent to fulfill an arrest of Eaton. A reasonable jury could determine that Chase's actions constituted the physical restraint that shows custody in this context. Eaton argues, "[a]t best, Chase detained Eaton for investigatory purposes with the intent to subject him to future arrest." But that interpretation ignores that Eaton had an active warrant out for his arrest; in short, this was not an investigatory *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968). Substantial evidence supports the verdict finding Eaton was under arrest and escaped from the custody of a public officer. So we affirm the conviction for escape.

**AFFIRMED.**