# IN THE COURT OF APPEALS OF IOWA

No. 22-1023
Filed June 21, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KALANDIS RASHIRD McNEIL,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Tom Reidel, Judge.


Kalandis McNeil appeals his conviction for second-degree robbery as an habitual offender.  **AFFIRMED.**


Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


Considered by Vaitheswaran, P.J., Greer, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**GAMBLE, Senior Judge.**

Kalandis McNeil appeals his conviction for second-degree robbery as an habitual offender. He contends the evidence presented was insufficient to support the jury's verdict because "[t]he eyewitness's in-court identification was tainted and not credible." McNeil also challenges the sentence imposed by the district court. Upon our review, we affirm.

I.      **Background Facts and Proceedings**

From the evidence presented at trial, the jury could have found the following. On November 24, 2021, C.S. was at Rhythm City Casino in Davenport. She "cashed out" at a kiosk near the entrance at approximately 1:45 a.m. As C.S. was counting her money, a man came up next to her and said, "Excuse me." C.S. apologized and moved "to another area to continue counting [her] money." Then C.S. exited the casino, got in her truck, and left the parking lot.[1] Casino surveillance videos depicted the man next to C.S., who was later identified as McNeil, "appeared to be watching [C.S.] and leave at a similar time in his own vehicle."

When C.S. arrived home at approximately 2:00 a.m., she noticed a vehicle "coming pretty fast" and park next to her truck as she exited. A man exited the vehicle "like he was on a mission"; he "pointed a gun to [her] head" and ordered her to give him the bag she was carrying. C.S. complied, and then she turned around and "started walking as fast as [she] could" toward her building. She was able to get inside safely, where she called a friend, who contacted the police. C.S.

---

[1] C.S. estimated she had "[a] little over $400" in her purse when she left the casino.

then realized she had not given the man her purse, rather she gave him a shopping bag containing a plaid jacket she had purchased from the casino a few days prior.

Police responded and reviewed surveillance videos from nearby cameras. C.S.'s truck and the other vehicle were identified by license plate reader cameras as traveling in close proximity on the path from the casino to C.S.'s home. Police learned the second vehicle was registered to McNeil's girlfriend, Erica. Later that day, officers conducted a traffic stop on Erica's vehicle, in which McNeil was a passenger. McNeil initially denied being at the casino earlier that day, but he later admitted he was there. A search of Erica's vehicle revealed a Rhythm City Casino cash-out voucher for November 24 at 1:45 a.m. A subsequent search of Erica's home revealed a prop gun resembling a firearm,[2] clothing, and shoes similar to that worn by McNeil as depicted on the casino surveillance videos, as well as a shopping bag with C.S.'s plaid jacket and a receipt for the jacket in C.S.'s name.

The State filed a trial information charging McNeil with second-degree robbery, enhanced as an habitual offender. McNeil pleaded not guilty, and the case proceeded to trial. The jury found McNeil guilty as charged,[3] and the district court entered judgment and sentence. McNeil filed a motion for new trial, which the district court denied following a hearing. McNeil appeals.

## II.     Sufficiency of the Evidence

McNeil challenges the sufficiency of the evidence supporting his conviction. We review the sufficiency of the evidence for correction of errors at law. *See State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021). "Under this standard, the court is

---

[2] C.S. testified this was not the firearm the robber pointed at her.
[3] McNeil stipulated to being an habitual offender.

highly deferential to the jury's verdict. We will affirm the jury's verdict when the verdict is supported by substantial evidence." *Id.* "Evidence is substantial when the quantum and quality of evidence is sufficient to 'convince a rational person of the defendant's guilt beyond a reasonable doubt.'" *Id.* (quoting *State v. Webb*, 648 N.W.2d 72, 75-76 (Iowa 2002)). In making this determination, we view the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the State. *Id.* The question is whether the evidence supports the finding the jury made, not whether it would support a different finding. *Id.*

The jury was instructed the State had to prove the following elements of second-degree robbery:

> 1. On or about the 24th day of November, 2021, in Scott County, Iowa, the defendant had the specific intent to commit a theft.
> 2. In carrying out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant:
> a. Committed an assault on [C.S.], or
> b. Threatened [C.S.] with or purposely put [C.S.] in fear of immediate serious injury.

*See* Iowa Code §§ 711.1 (setting forth the elements of robbery), .3 (defining robbery in the second degree), 902.8–.9 (2022) (providing sentences for felons and habitual offenders).

McNeil's sufficiency-of-the-evidence challenge rests solely on C.S.'s in-court identification of him as the perpetrator. He argues the identification was "tainted and unreliable" under the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). *See State v. Booth-Harris*, 942 N.W.2d 562, 570 (Iowa 2020) (listing the *Biggers* factors: "(1) the opportunity of the witness to view the perpetrator at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the perpetrator, (4) the level of

certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation" (quoting *State v. Taft*, 506 N.W.2d 757, 762–63 (Iowa 1993))). *But see State v. Doolin*, 942 N.W.2d 500, 511 (Iowa 2020) (rejecting a challenge to the admission of a first-time in-court eyewitness identification as impermissibly suggestive, finding, "Brkovic's in-court identification of Doolin is not tainted by any pretrial suggestive identification arranged by police, and his identification clearly has an independent origin—his memory of the face of the man who sat next to him in his car pointing a gun at his chest. Brkovic's testimony is admissible under our precedent. The fact that he did not identify Doolin before trial or give police a detailed description of his assailant 'raises a question of credibility, not admissibility'" (quoting *State v. Hinsey*, 200 N.W.2d 810, 814 (Iowa 1972))).

McNeil does not challenge the admissibility of C.S.'s in-court identification. Instead, he claims the eyewitness identification was not credible. McNeil refers to C.S.'s testimony that the incident happened pretty quickly and she was confused and in shock. It was 2:00 a.m., she was tired, and it was dark. She had a gun to her head. After she gave the robber her bag, C.S. did not look at him. C.S. only gave police a generic description of the robber and did not pick McNeil out of a photo array. C.S. did not recognize the robber as the same person she encountered at the casino. McNeil also claims C.S.'s identification was tainted by the impermissible suggestion of the police. He asserts the police informed C.S. of McNeil's name and told her he was the person she encountered at the casino. And right before she testified four months later, police showed C.S. the casino surveillance video and screen shots of McNeil. Only then did C.S. identify McNeil.

For these reasons, McNeil claims C.S.'s in-court identification was not sufficient evidence to support his conviction.

But viewing the evidence in the light most favorable to the verdict, we find that immediately after the robbery, C.S. told police the perpetrator was a black male, "six foot or more," in his mid to late twenties, "stocky, of a bigger build," with a "very frightening" face. C.S. had "just a glance" of the person she encountered at the casino. She did not recognize him, and she did not realize he followed her home. But she testified she had the opportunity to observe the robber and "did see him" outside her home. According to C.S., it was dark out, "but not so dark that I couldn't see who was standing in front of me." After identifying McNeil in court, she testified she was "certain" he was the person she saw holding a gun to her head and demanding her to give him her bag. C.S. also testified she recognized McNeil on the casino surveillance video. Based on this evidence we believe C.S.'s in-court identification of McNeil resulted from her own independent recollection of the incident and not an impermissible pretrial suggestive procedure of the police. *See Doolin*, 942 N.W.2d at 508 ("Under our long-standing precedent, even when a pretrial identification is tainted by an impermissibly suggestive procedure, 'the same witness may nevertheless identify a defendant at trial if such identification has an independent origin.'" (quoting *State v. Ash*, 244 N.W.2d 812, 814 (Iowa 1976))).

We believe it was for the jury to decide if C.S.'s testimony was reliable based on the totality of her testimony including the concerns noted by McNeil. *See id.* at 511 ("Juries are not so susceptible that they cannot measure intelligently the

weight of identification testimony that has some questionable feature." (citation omitted)). Indeed, the jury was instructed:

> The reliability of eyewitness identification has been raised as an issue. Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to see the person at the time of the crime and to make a reliable identification later.
>
> In evaluating the identification testimony of a witness, you should consider the following:
>
> 1. If the witness had an adequate opportunity to see the person at the time of the crime. You may consider such matters as the length of time the witness had to observe the person, the conditions at that time in terms of visibility and distance, and whether the witness had known or seen the person in the past.
>
> 2. If an identification was made after the crime, you shall consider whether it was the result of the witness's own recollection. You may consider the way in which the defendant was presented to the witness for identification, and the length of time that passed between the crime and the witness's next opportunity to see the defendant.
>
> 3. An identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.
>
> 4. Any occasion in which the witness failed to identify the defendant or made an inconsistent identification.

Moreover, McNeil's contention on appeal ignores other strengths in the State's case. Even without C.S.'s in-court identification, there is ample evidence supporting the verdict. As the district aptly noted:

> [T]he evidence would show that Mr. McNeil watched [C.S.] in the casino after she had cashed out. He can be shown on the videos turning his head multiple times to watch where she walks out of the casino. He then follows her, not directly out of the casino, but indirectly, still keeping an eye on her when he reaches the parking lot. He drives by her and then turns around and follows her from the casino. That can be shown on video.
>
> License plate recognition cameras were able to show that Mr. McNeil's vehicle was in [C.S.]'s neighborhood, and the stolen property from [C.S.] was found in the home where Mr. McNeil was staying, and it was actually just near the clothes that he was wearing that evening.

In addition, an investigating officer testified he immediately "recognized [McNeil] on the video" from the casino as someone he had "daily interaction with" "through prior employment." The officer stated he had no "question as to who that person in the video was."

Taking in all of the evidence in the light most favorable to the State, we conclude there is sufficient evidence establishing McNeil's identity as the perpetrator and supporting his conviction.

## III.     Sentencing

The district court sentenced McNeil to a period of incarceration not to exceed fifteen years with seventy-percent mandatory minimum, rejecting McNeil's request for a fifty-percent mandatory minimum. On appeal, McNeil contends the court failed to fully consider "rehabilitative factors," including his lack of an "extensive history of violence" and his "family support system."

"[T]he decision of the district court to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). Here, the court explained its sentencing decision as follows:

> In this case, the crime that was committed was a forcible felony, so incarceration is mandatory. The court's only discretion is whether the mandatory minimum portion of the sentence will be fifty percent or seventy percent. Whenever I handle any case, I always start with the least restrictive alternative before moving on to the more restrictive. The defendant's ability of rehabilitation is balanced against the need for the public to be protected.
> In this case, it is a forcible felony. Mr. McNeil has a lengthy criminal record. He has a poor record of success on parole and has historically committed new offenses while on parole or probation. The court finds as a mitigating factor the fact that he has substance

abuse issues that do tend, as he stated, to cause him to make poor decisions.

The court, in balancing the violent nature of this crime, along with Mr. McNeil's criminal history, finds that the maximum incarceration of seventy percent mandatory minimum should be imposed pursuant to [Iowa Code section] 902.12(4).

While the court did not specifically address McNeil's family support system as McNeil claims it should have, the court had no obligation to "specifically acknowledge each claim of mitigation." *State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995); *see also State v. Wilbourn*, 974 N.W.2d 58, 67 (Iowa 2022) ("[D]istrict courts are not obligated 'to give [their] reasons for rejecting particular sentencing options.'" (citation omitted)).  We further observe that not only is McNeil's representation of his criminal history stymied by the record, he did not accept responsibility for his actions in this case or show any remorse, maintaining "it wasn't [him] that did it" and he was the "scapegoat."  *See State v. W. Vangen*, 975 N.W.2d 344, 355 (Iowa 2022) ("A defendant's acceptance of responsibility for the offense, and a sincere demonstration of remorse, are proper considerations in sentencing.  They constitute important steps toward rehabilitation." (citation omitted)).

We conclude the district court's statement of reasons for imposition of the sentence did not reflect an abuse of its discretion.

**AFFIRMED.**