APPEL, Justice.
In this appeal, we consider whether the State offered sufficient evidence to support a third-degree burglary conviction in which the allegedly burglarized structure was a soon-to-be-demolished, dilapidated house and the defendant entered the house to obtain scrap metal. A jury convicted the defendant and the court of appeals affirmed the conviction. We granted further review. For the reasons expressed below, we reverse the decision of the court of appeals related to the sufficiency-of-the-evidence claim, reverse the judgment of the district court, and remand the matter for dismissal of the charge.
I. Factual Background and Proceedings.
The State charged David Rooney with burglary in the third degree under Iowa Code sections 713.1 and 713.6AG) (2011). According to the trial information, on November 4, 2012, Rooney entered an occupied structure in Council Bluffs, having no right, license, or privilege to do so, with the intent to commit a theft. Rooney pled not guilty and the matter proceeded to jury trial. Based on the evidence presented, a reasonable jury could have found the following facts.
The structure located at 233 South Fourth Street in Council Bluffs has not been used as a residence since 2002. The city had owned the property since 2007. The structure was a house built in 1890 that the city hoped could be preserved due to its historic value.
A few developers looked at the property, but none wanted to rehabilitate it. The house itself was boarded up, but over the years was broken into several times, and on several occasions, the city hired workers to secure the site after apparent break-ins. The city gave permission to the Council Bluffs Historic Alliance, Preserve Council Bluffs, and Habitat for Humanity of Council Bluffs to enter the property and remove historic features from the home if they wanted, including carpentry and the fireplace mantel. None of these organizations, however, removed anything from the house before it was demolished. Additionally, a neighbor and her husband had run a few people out of the property in the months prior to the alleged burglary.
By September 2012, the city had decided it would demolish the property. After a bidding process, the city awarded a notice of demolition on October 10. The notice gave the contractor authorization to tear down the house as of that date. While the contractor brought bulldozers to the property, demolition did not occur until November 8.
On November 4, four days prior to demolition, a Council Bluffs firefighter observed two persons loading a radiator from *370 the house onto a pickup truck with a homemade bed. The truck was backed up to the front door of the house. A neighbor also saw two men load metal registers onto a flatbed truck. Investigator Justin James entered the property about two hours later in the day after a fire was reported and extinguished. At that time, the house was in disrepair. The insulation was down, walls were exposed, drywall had been punctured, wires were hanging down, pipes were disconnected, and there was no electricity. Investigator James observed that “possibly at one time there had been transients living in it.”
The condition of the house indicated that someone had attempted to remove several wires, basically a stripping of copper, and all but one cast-iron radiator had been removed. Copper is valued at $8 per pound and cast iron is worth about $200 per ton. Plywood had been ripped off the back door and the front door was wide open.
Fire investigators ultimate found a small truck meeting the description of the vehicle that had been on the scene that day at a residence in Council Bluffs. Investigators found two persons at the residence, one of whom was Rooney. Investigator James testified that, by his answers, Rooney implied he was with another individual that day scrapping metal from the property. The .other individual admitted being at the property that day scrapping metal. Rooney further admitted that he did not have permission to be on the property and did not have permission to take any property or metal.
At the close of the State’s evidence and again at the close of all evidence, Rooney moved for a judgment of acquittal on grounds that the State failed to establish the structure was an occupied structure under Iowa Code section 702.12 or that Rooney had entered the structure. The district court denied the motions.
Prior to submission of the case to the jury, the trial court crafted its jury instructions. Instruction No. 14, the mar-shalling instruction, required the State to prove the house was ah occupied structure in order to convict Rooney of burglary in the third degree. Instruction No. 16 instructed the jury regarding what qualified as an occupied structure. Instruction No. 16 provided:
A building or structure is an “occupied structure” if it:
1. Is adapted for overnight accommodation of persons; or
2. Is used for the storage or safekeeping of anything of value unless it is too small or not designed to allow a person to physically enter it.
A building or structure is an “occupied structure” whether or not a person is actually present.
The jury returned a guilty verdict. Rooney appealed. He raised a sufficiency-of-the-evidence argument concerning the jury’s conclusion that he entered an occupied structure. Additionally, he argued the district court erred in submitting the adapted-for-overnight-accommodation and the used-for-the-storage-or-safekeeping-of-anything-of-value alternatives defining occupied structure to the jury. Finally, he claimed the district court erred in overruling his motion for mistrial based on alleged prosecutorial misconduct during closing argument. The court of appeals affirmed Rooney’s conviction. Rooney filed an application for further review, reprising his original claims on appeal, which we granted.
“On further review, we have the discretion to review all or some of the issues raised on appeal or in the application for further review.” State v. Clay, *371 824 N.W.2d 488, 494 (Iowa 2012). Here, we choose only to review the suffieiency-of-the-evidence claim. We let the court of appeals’ affirmance of the district court’s order overruling Rooney’s motion for mistrial based on alleged prosecutorial misconduct stand as the final decision of this court. See id.
II. Standard of Review.
We review sufficiency-of-evidence claims for correction of errors at law. State v. Sanford, 814 N.W.2d 611, 615 (Iowa 2012). In reviewing the evidence, we view the evidence in the light most favorable to the State. State v. Pace, 602 N.W.2d 764, 768 (Iowa 1999). “[W]e will uphold a verdict if substantial evidence supports it.” Sanford, 814 N.W.2d at 615 (internal quotation marks omitted). “Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.” Id.
III. Discussion.
A. Overview of the Crime of Burglary. At common law, burglary was the breaking and entering of a dwelling house of another, at night, with the intent to commit a felony. Common -law burglary was an offense against the security of habitation or occupancy rather than against ownership of property. See 4 William Blackstone, Commentaries on the Laws of England 228 (1st ed.1723-1780), available at http://avalon.law.yale.edu/18th_century/ blackstone_bk4chl6.asp (historical principle underlying the law of burglary is the protection of the right of habitation); see also Sanford, 814 N.W.2d at 617-18 (citing 3 Charles E. Torcía, Wharton’s Criminal Law § 331, at 302 (15th ed.1995); 13 Am. Jur. 2d Burglary § 3, at 219 (2009)). In this respect, the crime of burglary historically has been distinct from theft statutes, which protect ownership interests. See Pace, 602 N.W.2d at 768; see also Sanford, 814 N.W.2d at 618 (noting “[t]he deterrence of the trespass and the crime intended to be committed within [the structure] is of secondary importance” (internal quotation marks omitted)).
At first, our statutory crime of burglary tracked the common law. See Iowa Code § 2608 (1851) (defining burglary as breaking and entering “any dwelling house in the night time with intent to commit the crime of murder, rape, robbery, larceny, or any other felony; or after having entered with such intent break any such dwelling house in the night time, any person being then lawfully therein”); State v. Jones, 10 Iowa 206, 208 (1859). More recently, however, the Iowa legislature has expanded the scope of the crime of burglary beyond its common law parameters.
Of particular importance to this case, in 1978 the Iowa legislature replaced the term “dwelling house” with the more expansive term “occupied structure.” See 1976 Iowa Acts ch. 1245, ch. 1, § 1301 (codified at Iowa Code § 713.1 (1979)); see also Pace, 602 N.W.2d at 769 (noting our “legislature rewrote the burglary statute, in part, to replace ‘dwelling house’ with ‘occupied structure’ ”). Compare Iowa Code § 708.1 (1977) (defining punishment for burglary when “any person break and enter any dwelling house in the nighttime, with intent to commit any public offense; or, after having entered with such intent, break any such dwelling house in the nighttime, he shall be guilty of burglary”), with Iowa Code § 713.1 (1979) (defining burglary as “[a]ny person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure”), and id. § 702.12 (defining occupied structure as “any building, struc *372 ture, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value”). As was observed at the time, the term significantly expanded the reach of the burglary statute. See 4 John L. Yeager & Ronald L. Carlson, Iowa Practice: Criminal Law and Procedure § 298, at 76 (1979) (noting “[t]he term occupied structure, includes anything which would be a dwelling, and much more”). Iowa law currently defines occupied structure as
any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value.
Iowa Code § 702.12 (2011).
While the legislature has expanded the scope of burglary, it has also developed different degrees of burglary with graduated criminal penalties. Burglary in the first degree requires that a person be present in the structure and one of four circumstances apply. Id. § 71S.3.[1] Burglary in the first degree is a class “B” felony and is punishable by a maximum sentence of twenty-five years. Id. § 718.3(2); id. § 902.9(2). Burglary in the second degree occurs under one of two alternatives:
a. While perpetrating a burglary in or upon an occupied structure in which no persons are present, the person has possession of an explosive or incendiary device or material, or a dangerous weapon, or a bodily injury results to any person.
■ b. "While perpetrating a burglary in or upon an occupied structure in which one or more persons are present, the person does not have possession of an explosive or incendiary device or material, nor a dangerous weapon, and no bodily injury is caused to any person.
Iowa Code § 713.5(l)(a )-(b). Burglary in the second degree is a class “C” felony and is punishable by a maximum sentence of ten years. Id. § 713.5(2); id. § 902.9(4). Any burglary that is not first or second-degree burglary is third-degree burglary. Iowa Code § 713.6A(1). Burglary in the third degree is a class “D” felony, punishable by a maximum sentence of five years. Id,; id. § 902.9(4).
Our leading case interpreting the legislature’s expanded approach to burglary is Pace. In Pace, we considered whether there was sufficient evidence to support a burglary conviction when the defendant sprayed mace through a screen door upon two occupants and attacked one of the occupants with a metal club while standing on a concrete area just outside the back door. 602 N.W.2d at 767. The defendant also prevented the occupants from closing the door of the home by pushing inward on the door with his hands. Id. Eventually, the occupants successfully closed the door, locked it, and called the police. Id. The defendant was subsequently charged with burglary in the first degree. Id.
In Pace, we recognized that the legislature had broadened the scope of burglary beyond the common law crime. Id. at *373 768-69. Nonetheless, we emphasized two interpretive principles applied in construing the burglary statute. First, we recognized we are obligated to “interpret statutes consistent with common law unless the language of the statute clearly negates the common law.” Id. at 771. Second, we recognized our constitutional obligation to construe criminal statutes strictly. Id.
Turning to the burglary statute, the Pace court recognized that it contained two prongs. Id. at 769. The first prong related to the type of place that can be the subject of burglary. Id. The Pace court recognized that the legislature had expanded the places covered by burglary when it rewrote the burglary statute, compared to the common law definition, by including not only buildings, structures, vehicles, and similar places but also “ ‘appurtenances to buildings and structures.’ ” See id. (quoting Iowa Code § 702.12 (1997)). The court noted that although the types of places covered by the statute were expanded, the legislature still required that the protected place have a purpose or use for carrying on certain activities. Id. at 769-70.
In Pace, the court determined the step or stoop outside the back door and the cement walkway leading up to the step would be an appurtenance under the burglary statute. Id. at 770. As a result, the first prong related to place had been satisfied. Id. We next determined whether the second prong of the definition of an occupied structure applied, namely, whether the place was “adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value.” Id. (internal quotation marks omitted).
With respect to the concrete stoop and sidewalk leading up to the house, we concluded the activity prong of the burglary statute had not been met. Id. at 771. We reached this conclusion for three reasons. First, we noted the second prong required the place be occupied “by reason of an activity.” Id. We reasoned it would be difficult to imagine an appurtenance that would not be an occupied structure if merely walking over or momentarily standing on the appurtenance was occupancy for the purpose of carrying on an activity. Id.
Second, we noted the common law purpose of burglary was an offense against security of occupancy. Id. It is not enough that the structure be covered by the place requirement of the statute; there must be some activity that takes place in the structure to satisfy the second prong of the statute. Id.
Finally, we noted that we “construe criminal statutes strictly[ ] and resolve all ambiguities in favor of the accused.” Id. We also observed that we cannot interpret statutes so broadly that we threaten a due process violation because of vagueness and uncertainty. Id. We thus emphasized that the second prong of the statute existed to “help narrow its parameters.” Id.
Although the defendant’s presence on the sidewalk and the stoop outside the house did not bring him within the burglary statute, the Pace court nonetheless affirmed his burglary conviction on another theory. Id. at 773-74. When the occupants attempted to retreat within the house, the defendant pushed the door to the house in order to prevent the occupants from closing and locking the door. Id. at 773. The defendant thus broke the plane of the threshold of the house. Id. Because of his entry into the house, the evidence was sufficient to support a second-degree, but not first-degree burglary conviction. Id. at 773-74.
*374 As in Pace, we have consistently applied this two-prong test when analyzing cases under our burglary statute. See, e.g., Sanford, 814 N.W.2d at 616 (noting vehicle clearly met the first prong and thus the pivotal issue of the case turned on the second prong); State v. Sylvester, 331 N.W.2d 130, 131-32 (Iowa 1983) (applying two-prong test to delivery truck); State v. Sangster, 299 N.W.2d 661, 663 (Iowa 1980) (holding evidence was sufficient when garage was used to store automobile).
In this case, a number of questions emerge. Is a house always an occupied structure because of its original purpose? If not, did the State produce sufficient evidence to satisfy the second prong of the burglary statute?
B. Positions of the Parties.
1. Rooney. Rooney asserts the evidence is insufficient to satisfy the second prong of the Pace test. Rooney recognizes that the State sought to satisfy the second prong in two ways: by asserting that the structure was adapted for overnight accommodation and that the structure was used for the storage or safekeeping of anything of value. Rooney argues, however, that the State’s evidence fell short on each ground.
With respect to the adapted-for-overnight-accommodation alternative, Rooney argues that while the house in question might at one time have been suited for overnight accommodation that does not mean it was so adapted at the time of the particular unauthorized entry. He notes the building sat vacant for approximately ten years after the prior resident passed away in 2002, that it had been boarded up and had no electricity, that the walls were exposed in the interior of the house, that the drywall and plaster were punctured, that the pipes were disconnected, and that the building was in a general state of disrepair. Rooney further notes that by July 2012, the city had determined to tear the structure down; had entered into a demolition contract to destroy the structure; and had given the demolition company a notice to proceed on October 10, 2012, which gave the company authorization to tear down the house as of that date. Rooney notes that due to a delay in obtaining a permit, the building was not actually demolished until shortly after November 8, 2012.
In support of his argument, Rooney cites Pace for the proposition that burglary occurs only by reason “of some activity occurring in the structure.” 602 N.W.2d at 771. Rooney argues that at the time of the alleged burglary, the structure was not adapted for overnight accommodation. He contends State v. Anderson, 975 N.E.2d 556, 559 (Ohio Ct.App.2012), supports his position. In Anderson, the Ohio court concluded that an abandoned residence, which was condemned and was to be demolished by the city, was no longer a place maintained as a dwelling, occupied as a habitation, or specially adapted for overnight accommodation. Id. at 560-61.
Rooney makes a similar argument regarding the statutory alternative that burglary occurs when a structure is used for the storage or safekeeping of anything of value. Rooney recognizes there was testimony that the copper wire and cast-iron radiators that were part of the structure had scrap value. But Rooney argues that the mere fact the items were located in the structure does not mean the place is used for the storage or safekeeping of those items. Rooney points out that if the used-for-the-storage-or-safekeeping-of-anything-of-value alternative is satisfied by component parts of a building, then virtually every building would be an occupied structure by virtue of wiring, plumbing, boards, or nails that have scrap value. He *375 notes that Pace made clear that “[bjurgla-ry was never intended to cover all structures, but only those occupied by reason of some activity occurring in the structure.” 602 N.W.2d at 771.
2. The State. The State disagrees with Rooney’s analysis. With respect to the adapted-for-overnight-accommodation alternative, the State notes that under Iowa law, it is not necessary that a person is actually present in order for a building to be an occupied structure. See Iowa Code § 702.12. According to the State, we have generally interpreted the term “occupied structure” broadly. In support of its argument, the State cites Iowa cases in which a garage, a driveway, a private office in a public building, and the cab of a truck were held to be occupied structures. See State v. Wills, 696 N.W.2d 20, 23-24 (Iowa 2005) (garage); State v. Baker, 560 N.W.2d 10, 13-14 (Iowa 1997) (driveway); Bailey v. State, 493 N.W.2d 419, 422 (Iowa Ct.App.1992) (private office in public building), overruled on other grounds by State v. O’Shea, 634 N.W.2d 150, 159 (Iowa Ct.App.2001); State v. Buss, 325 N.W.2d 384, 385 (Iowa 1982) (cab of truck).
Based on the premise that the statute should be given a broad reading, the State declares the condition of the house is of no particular legal significance. As argued by the State at oral argument, “A house is a house is a house.” While the State concedes the structure here had no electricity or plumbing, the State asserts the same might be true of a summer cabin near a rural Iowa lake. Further, the State maintains there is evidence in the record that transient persons were recently living in the house, thereby satisfying the adapted-for-overnight-accommodation requirement.
The State further rebuts the arguments advanced by Rooney based upon the Anderson case. The State rejects the teaching of Anderson, noting that it is risky to rely on cases from other jurisdictions with differently worded statutes, and that in Ohio, unlike Iowa, a legislative committee comment expressly stated the burglary statute did not apply to a house that has been “permanently abandoned” or “vacant for a prolonged period of time.” See 975 N.E.2d at 559-60 (citing State v. Green, 18 Ohio App.3d 69, 480 N.E.2d 1128, 1131-32 (1984)). The State further suggests that if the Iowa legislature wanted to provide an exemption from burglary prosecutions for abandoned or condemned property, it would have added an affirmative defense such as that contained in the Model Penal Code. See Model Penal Code § 221.1(1), 10A U.L.A. 493 (2001) (noting “[i]t is an affirmative defense to prosecution for burglary that the building or structure was abandoned”). Finally, the State directs our attention to several cases from other jurisdictions in which burglary convictions were upheld when dilapidated or abandoned structures were involved. See Herrick v. Kansas, 25 Kan.App.2d 472, 965 P.2d 844, 846, 848 (1998) (affirming burglary conviction in case involving an unoccupied house being used for storage); Askew v. Commonwealth, No. 2008-CA-000240-MR, 2009 WL 875059, at *2 (Ky. Ct.App.Apr. 3, 2009) (affirming burglary of a dilapidated house); State v. Kowski, 423 N.W.2d 706, 710 (Minn.Ct.App.1988) (affirming burglary conviction of unoccupied, under-construction summer cabin).
The State contends, however, that even if there was insufficient evidence the structure in this case met the adapted-for-overnight-accommodation alternative, the evidence satisfies the used-for-the-storage-or-safekeeping-of-anything-of-value alternative. The State maintains the mere fact that the property taken was fixtures makes no difference under the burglary statute. In any event, the State contends the fact that Rooney walked out of the *376 house with cast-iron radiators suggests there were some portable items of value in the house. The State further argues the house was used to store items of value, including historical carpentry, a fireplace mantel, copper wiring, and cast-iron radiators.
Finally, the State urges that adoption of Rooney’s argument will have negative policy consequences. According to the State, if we adopt Rooney’s position, an entry into a house that appears vacant, but is actually occupied at the time of the entry, will not lead to a burglary conviction. A wintertime entry into a summer vacation residence, according to the State, would no longer be burglary. Removing “so many dwelling places” from the scope of the statute, according to the State, is a consequence the legislature never intended.
C. Analysis. We begin our analysis by reviewing the clear teaching of Pace and our related easelaw. In order to support a burglary conviction, the State must •produce substantial evidence to support two independent elements of our burglary statute, one related to place and the second related to activity, purpose, or use. Pace, 602 N.W.2d at 769. It is true that the legislature has broadly phrased the element of place and we, as a result, have found the element satisfied in a wide variety of contexts. See, e.g., id: at 770 (finding “a step or stoop outside the door of a home, as well as the cement walkway leading to the step, would fall within the definition of an appurtenance to the house”); Baker, 560 N.W.2d at 13 (concluding a driveway is an appurtenance to a building or structure and thus within the first prong of the burglary statute); State v. Hill, 449 N.W.2d 626, 628 (Iowa 1989) (finding a fenced enclosure behind an automobile parts store to be an appurtenance to a building and therefore within the first prong of the burglary definition).
But this does not mean, for instance, that all houses, which are certainly the type of place that satisfy the place prong of the statute, are necessarily occupied structures. We have held that even when the place element of burglary is clearly met, we must move on to the activity or purpose prong of the definition of occupied structure. See Sanford, 814 N.W.2d at 616 (noting that although the vehicle clearly met the first prong, the “pivotal issue” was whether the second prong had been met); Pace, 602 N.W.2d at 770-71 (concluding that even though the stoop outside the door of a home satisfied the first prong, it did not meet the purpose prong, and therefore was not an occupied structure under the statute).
Under the burglary statute, the second prong related to activity or purpose can be met in three alternative ways. In this case, two alternatives are implicated, namely, the adapted-for-overnight-accommodation alternative and the used-for-the-storage-or-safekeeping-of-anything-of-value alternative. See Iowa Code § 702.12.
Turning to the adapted-for-overnight-accommodation alternative, we believe this alternative may be met only with evidence showing the structure was adapted for overnight accommodation at the time of the crime.[2] The burglary statute *377 is designed to protect people from risks associated with entries into structures where certain types of activities are likely to occur. See Sanford, 814 N.W.2d at 616. As we stated in Pace, “[bjurglary was never intended to cover all structures, but only those occupied by reason of some activity occurring in the structure.” 602 N.W.2d at 771 (emphasis added). We think it is not enough for the State to show that a structure was adapted for overnight accommodation ten years ago. The activity or purpose must be present at the time of the alleged crime. See Pace, 602 N.W.2d at 771 (describing the “purpose” prong and the requirement that “the subject matter of burglary be occupied in conjunction with some activity which takes place in the structure” (emphasis added)); Merriam-Webster’s Collegiate Dictionary 263 (11th ed.2014) (defining conjunction as “occurrence together in time or space”). - Other states with the adapted-for-overnight-accommodation language require a contemporaneous purpose or use under their burglary statutes. See, e.g., Commonwealth v. Graham, 607 Pa. 580, 9 A.3d 196, 204 (2010) (holding the structure was not adapted for overnight accommodation at the time of the illegal entry); Soliz v. State, 785 S.W.2d 438, 439 (Tex.Ct.App.1990) (noting “the status of the house at the time of the offense is the relevant query”); Blankenship v. State, 780 S.W.2d 198, 200 (Tex.Crim.App.1989) (en banc) (noting the definitive feature of habitation as defined in the statutes is that “the structure must have been adapted for and at the time of the offense be fit for accommodation ‘overnight’ ”).
The question is thus whether the structure was adapted for overnight accommodation at the time Rooney allegedly entered it. In theory, the test of adaption could turn on the subjective intent of the property owner, an objective analysis of the condition of the property, or perhaps upon actual use of the property. The term “adapt” was defined by the Pace court as “to make fit, often by modification.” 602 N.W.2d at 772 (quoting Merriam-Webster’s Collegiate Dictionary 13 (10th ed.1998)).
In this case, however, the facts show no adaptation for overnight accommodation under any theory. The city boarded up the property to keep people out. The structure had no electricity or running water. It was falling apart. The city had determined to demolish the structure, a contract of demolition had been approved, and destruction was imminent. It was not adapted for overnight accommodation.
The State contends there was evidence that transients were occasionally breaking into the property. Generally, however, the cases suggest that the purpose of burglary statutes is to protect the person with custody and control of the property, not the temporary dwelling of transients. See State v. Hagedorn, 679 N.W.2d 666, 671 (Iowa 2004) (noting the purpose of the burglary law is to protect the person with custody and control of the property); Pace, 602 N.W.2d at 768 (stating burglary law is intended to protect the security of habitation). If so, it is clear the structure was not adapted for overnight accommodation from the viewpoint of the owner, either the city or the demolition company, at the time of the alleged illegal entry.
In any event, even if actual use were relevant, the evidence on this point is insufficient to support a burglary conviction. While a neighbor testified she and her husband had run a few people off the property in the months prior to November 4, this fleeting statement is not substantial *378 evidence that transients were spending the night on the premises at the time of the crime. Indeed, the evidence is consistent with occasional drug usage, or temporary repose, not associated with habitation or overnight accommodation. A fire investigator who was inside the structure on the day of Rooney’s arrest testified that “there were multiple spots where it appeared that possibly at one time there had been transients living in it.” Such speculation that it appeared possible at one time that transients had lived in the structure does not provide substantial evidence that the structure was being used by transients at the time of the alleged crime.
We do not view our interpretation of the adapted-for-overnight-accommodation alternative as undermining the purpose of the statute. Indeed, it will be quite easy for the State to show that the vast majority of homes are adapted for overnight accommodation. By excluding a structure that is falling apart and scheduled for imminent demolition from the reach of the burglary statute, we retain the historic common law purposes of the statute, while remaining consistent with the legislature’s existing statutory framework.
We now turn to the used-for-the-storage-or-safekeeping-of-anything-of-value alternative. There was substantial evidence in the record that copper wire and cast iron has some scrap value. But the activity or purpose prong requires more than the mere fact there is some scrap that might be ripped out of a dilapidated building with some marginal economic value. If this were true, every structure that contained a nail or a screw or a plank might be an occupied structure under the statute. In order to qualify under the activity and purpose alternative, the structure must be adapted “for storage or safekeeping of anything of value.” Iowa Code § 702.12; see also Pace, 602 N.W.2d at 772 (noting a driveway was not “made or modified as a place for the storage or safekeeping of valuable property”); Sangster, 299 N.W.2d at 663 (noting “an occupied structure includes a structure adapted ‘for the storage or safekeeping of anything of value’ ” (quoting Iowa Code § 702.12)). At the time of the alleged crime, there was simply no evidence that the city had adapted or modified the structure for use to store or to keep safe anything of value. Cf. Pace, 602 N.W.2d at 772. The building was scheduled for demolition and the bulldozers were on the scene. Further, there is no evidence in the record that a third party had adapted the structure for storage or safekeeping of anything of value.
Of course, all this does not mean that Rooney was not guilty of any crime. He may have been guilty of theft, see Iowa Code- § 714.1 (defining theft), and he may have been guilty of trespass, see id. § 716.7 (defining trespass). But he was not guilty of burglary.
IV. Conclusion.
For all the above reasons, the decision of the court of appeals related to the sufficiency-of-the-evidence claim is reversed, the judgment of the district court convicting Rooney of burglary in the third degree is reversed, and the matter is remanded to the district court for dismissal of the charge.
DECISION OF COURT OF APPEALS AFFIRMED IN PART AND REVERSED IN PART; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.
All justices concur except ZAGER, WATERMAN, and MANSFIELD, JJ., who dissent.

. The four circumstances as stated in the Code are:
a. The person has possession of an explosive or incendiary device or material.
b. The person has possession of a dangerous weapon.
. c. The person intentionally or recklessly inflicts bodily injury on any person.
d. The person performs or participates in a sex act with any person which would constitute sexual abuse under section'709.1.
Iowa Code § 713.3(l)(a)-(d).

. During closing argument, the State walked away from this alternative, stating:
I'm not saying it was adapted for accommodations. I couldn’t say why don't you guys find for me on that element because at one time it was adapted for overnight accommodations. That's not what the law is designed to. I don't think that really is fair here.
Closing arguments, however, are not evidence and the jury was instructed and still bound to consider the case under both alternatives. See Jury Instruction No. 10 (instructing the jury that statements by the law *377 yers are not evidence); Jury Instruction No. 16 (instructing under both alternatives).