# IN THE COURT OF APPEALS OF IOWA

No. 18-0377
Filed June 5, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DEREK KRIEGER,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

A defendant appeals his convictions for third-degree burglary and two counts of criminal trespass. **REVERSED AND REMANDED.**

Jane M. White of Jane White Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

At issue in this burglary appeal is the nature of the occupied structure that Derek Krieger allegedly entered with the intent to commit theft. The State was required to prove beyond a reasonable doubt that the lobby of the apartment building was not open to the public. Because the State's evidence did not meet that level of proof, we reverse Krieger's third-degree burglary conviction and remand for dismissal.

Krieger also seeks to overturn two related criminal trespass convictions. Because those convictions are simple misdemeanors, Krieger does not have a right to direct review. *See* Iowa Code § 814.6(1)(a) (2017); *Tyrell v. Iowa Dist. Court*, 413 N.W.2d 674, 675 (Iowa 1987). But we may treat his notice of appeal as a request for discretionary review and then decide whether to reach his challenge. *See* Iowa R. App. P. 6.108. Because the simple-misdemeanor convictions are closely linked to the indictable offense, we will review them here. *See* Iowa R. App. P. 6.106(2). We likewise reverse those convictions and remand for dismissal.

## I.      Facts and Prior Proceedings

Early in the afternoon of May 1, 2017, a postal worker called the police through a non-emergency line to report a "suspicious" white male who "appeared to be going through mailboxes" in a Waterloo neighborhood. Officer Adam Galbraith responded, but he was unable to locate the man described by the caller. Half an hour later, Officer Galbraith received an update from the same caller, who saw the man again. Officer Galbraith returned to the neighborhood, this time with success. The officer stopped Krieger, who matched the caller's description. When

asked why he was wandering the neighborhood, Krieger told the officer he was looking for his mom and his girlfriend. Officer Galbraith continued asking Krieger questions about his activity that day. Eventually, with Krieger's consent, the officer searched the bag Krieger carried. Among other things, Officer Galbraith found several pieces of mail not addressed to Krieger.

When asked why he had mail addressed to others, Krieger first told Officer Galbraith he found the mail on the floor of his room and planned to toss it. Later, Krieger told Officer Galbraith he found the mail "outside of a dumpster." Officer Galbraith was skeptical of Krieger's explanation—the ground was wet from rainfall earlier that day, but the mail was dry. Despite his concerns about Krieger's inconsistent responses, Officer Galbraith let Krieger go on his way.

Just before 7:00 p.m. that same evening, Kisha Smith was looking out her window and saw a man opening and peering inside mailboxes in her Waterloo neighborhood.[1] Smith called the police non-emergency line to report the suspicious activity. Officer Adam Wittmayer arrived less than one minute after being dispatched and spotted Krieger, who matched the description given by Smith. Officer Wittmayer approached Krieger to ask about his activities that evening. Krieger explained "he was looking for a friend's house on Tami Terrace, but he was unsure which house was hers." Krieger agreed to let Officer Wittmayer search him, and Officer Wittmayer found "a run-of-the-mill pocketknife, some mail and some checks, personal checks." Officer Wittmayer noticed the checks were

---

[1] Smith lived near the intersection of Wildwood Road and Tami Terrace.

made out to rental-property companies, not Krieger. Krieger told Officer Wittmayer he found the checks on the ground.

Krieger had mail from three separate neighborhood properties, all apartment complexes—one on West Ninth Street,[2] one on Joan Drive,[3] and one on Wildwood Road.[4] Waterloo police officers continued the investigation by visiting the buildings on West Ninth Street and Joan Drive, then contacting the property managers for those two complexes. Police found the front doors to the West Ninth Street and Joan Drive complexes were not locked.

Police also contacted the property manager for the Wildwood Road property, but officers did not visit that location during the course of their burglary investigation. When Officer Wittmayer contacted Shirley Hinde, the Wildwood property manager, she said the entry door was kept locked. She testified if someone did not live in that building he could only get in "with a key or with a tenant letting you in." Hinde added: "And unfortunately my tenants are very friendly, so if anybody comes to the door . . . ," before being cut off by a new question from the prosecutor.

On cross examination, Hinde acknowledged the building was not marked with a sign announcing entry was restricted to residents—"We just have the lock on the door and a no soliciting sign." She also testified she didn't know whether

---

[2] Police found a letter from U.S. Cellular addressed to a West Ninth Street resident in Krieger's possession.

[3] From Joan Drive, Krieger carried two money orders (both from the same resident) and two personal checks, each made out for around $300. Matthew Good, the owner of the apartment building on Joan Drive, testified Krieger was not a resident and did not have permission to be in the building.

[4] Associated with the Wildwood Road building, Krieger had a personal check addressed to Lemur Properties in the amount of $353.00 from resident Jeff Lindley, who had deposited his May rent in a locked box in the lobby of his building.

the lock was working properly or if the door was closed completely on the day the mail was taken. When presented with a defense photo exhibit of the front door of the Wildwood apartment building, she admitted it appeared the wood had worn away from the lock. Hinde then exhibited confusion about which front door her management company had replaced[5]—"where it looks like maybe they tampered with the lock, which very easily could happen, I was just thinking, I thought we put metal doors when I replaced those a couple years ago, but I don't think we did." She acknowledged that particular front door was not "still in good shape."

Based on the police investigation of these May 1 events, the State filed its trial information on May 12, 2017, charging Krieger with two counts of criminal trespass, simple misdemeanors in violation of Iowa Code section 716.7(2) (2017), relating to his alleged activity at the Joan Drive and West Ninth Street buildings, and one count of third-degree burglary, a class "D" felony in violation of Iowa Code sections 713.1 and 713.6A(1) relating to Krieger's alleged conduct at the Wildwood Road property. A jury eventually found Krieger guilty on all three counts.

Krieger appeals, challenging the sufficiency of the State's evidence and raising several ineffective-assistance-of-counsel claims.[6]

## II.    Scope and Standard of Review

We review claims of insufficient evidence for correction of errors at law. *State v. Rooney*, 862 N.W.2d 367, 371 (Iowa 2015) (citing *State v. Sanford*, 814

[5] Hinde testified to managing a total of fifty-four properties; the facility located at 516 Wildwood was the management company's first building. She recalled adding locks to the outside doors about ten years ago. Hinde also testified the building had no security cameras.

[6] Because we reverse on the sufficiency grounds, we need not reach the remaining issues.

N.W.2d 611, 615 (Iowa 2012)). We uphold the verdict when supported by substantial evidence. *Id.* (quoting *Sanford*, 814 N.W.2d at 615). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury" of the defendant's guilt beyond a reasonable doubt. *Id.* (quoting *Sanford*, 814 N.W.2d at 615). "Evidence is not substantial if it raises only suspicion, speculation, or conjecture." *State v. Yeo*, 659 N.W.2d 544, 547–58 (Iowa 2003).

## III. Analysis

**A.** **Burglary**. We first consider Krieger's challenge to his burglary conviction.[7] The marshalling instruction required the State to prove these elements:

> 1. On or about the 1st day of May 2017, the defendant did break into or enter an apartment building located at 516 Wildwood Road, Waterloo, Black Hawk County, Iowa.
> 2. The apartment building was an occupied structure . . . .
> 3. The defendant did not have permission or authority to break into or enter the apartment building.
> 4. The apartment building was not open to the public.
> 5. The defendant did so with the specific intent to commit a theft, having no right, license or privilege to do so.
> If the State has proved all of the elements, the defendant is guilty of Burglary in the Third Degree. If the State has failed to prove any one of the elements, the defendant is not guilty of Burglary in the Third Degree and you will then consider the lesser included charges of Attempted Burglary in the Third Degree and Criminal Trespass . . . .

---

[7] The State argues Krieger failed to preserve all sufficiency arguments save his open-to-the-public challenge. Because we find that issue dispositive, we need not address the specificity of the motion for judgment of acquittal.

Krieger argues the State failed to prove the Wildwood Road apartment building was "not open to the public."[8] He emphasizes: "Law enforcement never went there on the day of the investigation or any day after. It was mere speculation as to whether or not the building was locked on the day in question." Krieger focuses on the lack of signage indicating the public was unwelcome in the common areas of the apartment building, and he highlights the property manager's uncertainty about the functionality of the lock on the door of the Wildwood building on the day of the burglary.

In defending its proof, the State asserts: "The jury could reasonably decide to believe Hinde who as the manager of the 516 Wildwood Road apartment building had the authority to determine whether her apartment building is open to the public or not. She stated it was not." The State also relies on testimony from resident Lindley, who agreed the outside door of the Wildwood building was "typically locked." As a hedge, the State points out burglary can be accomplished by either breaking or entering—noting it was not essential for the prosecution to prove the door was locked.

We find a fundamental flaw in the State's reasoning. While the jury could credit Hinde's testimony that she intended the building be secured, her subjective belief cannot carry the day. To give potential violators fair notice, the test for deciding if a building is "open to the public" must be an objective one. *See State*

---

[8] When discussing jury instructions, defense counsel asked the district court to define "open to the public" as "any place a reasonable person would believe he had open access upon." The court declined to give a definitional instruction, citing *State v. Chambers*, 529 N.W.2d 617, 619–20 (Iowa Ct. App. 1994).

*v. Pace*, 602 N.W.2d 764, 771 (Iowa 1999).[9] "[I]f the premises do not in some way cause a reasonable person to believe that he or she must seek permission to enter, it does not matter that the building's owner may have subjectively intended the premises to be made private." *State v. Shapiro*, 349 P.3d 608, 611 (Or. Ct. App. 2015) (describing statutory definition of "open to the public" as "premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required" (citation omitted)); *accord People v. Taylor*, 452 N.Y.S.2d 526, 528–29 (Sup. Ct. 1982) (bemoaning lack of objective criteria in case law to guide jurors in deciding if a building was "open to the public" on the date and at about the time of the alleged crime, and listing possible considerations: "the type of building involved; who owned the building; whether such ownership was posted or advertised; the physical condition and general appearance of the building; the purpose, if any, for which it was being used; whether members of the public were expressly or impliedly invited to enter; whether the public moved freely in and out of the building; whether doors and windows of the building were intact and were closed, locked or blocked; and whether any warning signs were conspicuously posted; as well as any other evidence which might have some bearing on their determination in this regard").

---

[9] In discussing appurtenances, *Pace* reasoned:

> Statutes must not be viewed so broadly that they threaten the constitutional due process prohibitions against vagueness and uncertainty. Thus, in most instances [the 'purpose or use' prong of occupied structure] will require evidence which would objectively reveal that an activity occurs in or upon the appurtenance which causes persons to occupy it with a sense of security or repose similar to that enjoyed in the principal structure.

602 N.W.2d at 771 (internal citation omitted).

When assessing the "not open to the public" element by objective criteria, we find little evidence that a reasonable person in Krieger's position would have believed the common area of the Wildwood Road apartment building was closed to the public. The State offered no proof the physical structure or function of the apartment building on the day in question would have appeared to exclude members of the public. Further, custom would support Krieger's belief that the common area of an apartment building may be open to the public. *See, e.g.*, *State v. Booth*, 670 N.W.2d 209, 216 (Iowa 2003) (finding at least some members of the public had access to common hallway of apartment house in concluding it met the definition of "public place" within public-intoxication statute).

Our case law underscores the importance of the presence or absence of posted signs when deciding if an otherwise-ambiguous space is open to the public in burglary prosecutions. *See, e.g.*, *State v. Mosley*, No. 02-1106, 2003 WL 22187422, at *1 (Iowa Ct. App. Sept. 24, 2003) ("Notices posted on entrances to the school required visitors to report to the main office."); *State v. Douglas*, No. 00-1558, 2001 WL 1445363, at *3 (Iowa App. Nov. 16, 2001) (finding insufficient evidence of burglary when control room in jail did "not have any signs or marking on its doors indicating it [was] not open to the public"); *Chambers*, 529 N.W.2d at 621 (finding substantial evidence to support not-open-to-the-public element when human services building separated public and nonpublic areas by posting "Authorized Personnel Only" sign on the door). Hinde admitted she had not posted

signs on the Wildwood apartment building informing the public of restrictions on entering.[10]

We understand in burglary prosecutions an occupied structure need not be locked for breaking or entering to occur. *See Bailey v. State*, 493 N.W.2d 419, 422 (Iowa Ct. App. 1992), *rev'd on other grounds by State v. O'Shea*, 634 N.W.2d 150 (Iowa Ct. App. 2001). But without a posted sign, the only outward indication the apartment building on Wildwood Road was not open to the public would have been if the front door was locked.[11] Testimony from Hinde and Lindley that the door was "typically" locked does not satisfy the State's burden to prove the structure was "not open to the public" at the time of Krieger's alleged entry. Here, the State charged Krieger with a felony even though the police did not bother to visit the scene of the alleged burglary. The State presented no evidence showing how the apartment building looked on the day of the crime. It was Krieger who offered a photograph of the outside door into evidence. And that photograph detracted from the State's position the building was not open to the public.

Even viewing the evidence in the light most favorable to the State, we find insufficient evidence to support Krieger's felony conviction. The property manager's subjective intent to restrict public access and a tenant's confirmation that the front door was usually locked does not satisfy the State's burden to prove

---

[10] The State mentions the "No Soliciting" sign on the outside door of the apartment building in support of the not-open-to-the-public element. But that sign only prohibited seeking trade or contributions. *Solicit*, *The American Heritage College Dictionary* (3d ed. 1997). It did not send a general warning the building was off limits to the public.

[11] To this end, the State opted not to charge Krieger with burglary for his alleged entries into the unlocked apartment buildings on West Ninth and Joan Drive.

beyond a reasonable doubt the building was "not open to the public" on the date of the alleged burglary. We reverse the conviction and remand for dismissal.

**B.    Criminal Trespass.**  Krieger next attacks his convictions for two counts of criminal trespass. With regard to both the Joan Drive and the West Ninth Street properties, the State was required to prove these elements:

> 1.  On or about the 1st day of May, 2017, the defendant entered in or upon the property of another located at [address of apartment building], Waterloo, Black Hawk County, Iowa.
> 2.  The defendant did not have the express permission of the owner or resident of the property.
> 3.  When the defendant entered in or upon the property, he had the specific intent to commit a theft on or in the property.
> If the State has proved all of the elements, the defendant is guilty of Criminal Trespass. If the State has failed to prove any one of the elements, the defendant is not guilty of Criminal Trespass.

Identical to his burglary challenge, Krieger contends the State failed to demonstrate the Joan Street and West Ninth Street apartment complexes were "not open to the public." The State argues it did not have to prove the buildings were not open to the public to satisfy the elements of criminal trespass. *See* Iowa Code § 716.7(2)(a)(1) ("'Trespass' shall mean . . . [e]ntering upon or in property without the express permission of the owner . . . with the intent to commit a public offense . . . .").[12]

We reject the State's argument. The elements of criminal trespass incorporate the concept that "the property of another" was "not open to the

---

[12] Before 1981, the criminal trespass statute prohibited "entering upon or in property without justification or without the implied or actual permission of the owner, lesee, or person in lawful possession with the intent to commit a public offense . . . ." The legislature struck "without justification" and replaced "implied or actual" with "express." 1981 Iowa Acts ch. 205, § 1. The bill's explanation made clear the legislature intended members of the public obtain "express permission" before "entry upon property for certain purposes including hunting, fishing, or trapping." S.F. 289, 69th Gen. Assemb., 1st Sess. (Iowa 1981).

public."[13]  *See State v. Waller*, 450 N.W.2d 864, 866 (Iowa 1990) (explaining criminal trespass element of entry upon property of another "corresponds to entry into an occupied structure not open to the public"); *see also State v. Sangster*, 299 N.W.2d 661, 664 (Iowa 1980) (holding "absence of authority is a common element in the two offenses").  As commentators have noted, "there must be some basis to believe that an area that appears open to the public is not in fact so open before entry constitutes criminal trespass."  87 C.J.S. *Trespass* § 141, Westlaw (database updated Mar. 2019).

Moreover, the State's interpretation of section 716.7(2)(a)(1) as including property that was open to the public would render superfluous the prohibitions in section 716.7(2)(a)(2).  *See Seeberger v. Davenport Civil Rights Comm'n*, 923 N.W.2d 564, 571 (Iowa 2019) (preferring interpretation that avoids surplusage). Paragraph (2) criminalizes entering or remaining on property without justification after being asked to leave or to abstain from entering by the owner, person in lawful possession, or other official with authority over the property.  Iowa Code § 716.7(2)(a)(2).  If a person must seek express permission to enter *any* property of another under paragraph (1), the person with authority over the property would never need to ask the would-be trespasser to leave or to abstain from entering under paragraph (2).  *See id.* § 716.7(2)(a)(1)–(2).

If the property in question was open to the public, Krieger had permission to enter.  Both the Joan Street and West Ninth Street buildings were unlocked,

---

[13] Our court rejected the argument that the public had "implicit permission" to enter a private driveway.  *State v. Clay*, 455 N.W.2d 272, 274 (Iowa Ct. App. 1990) (upholding criminal trespass conviction).  But *Clay* did not hold that a defendant could be prosecuted for criminal trespass for entering property open to the public without express permission.

allowing public access to the lobby areas. The State did not offer evidence that any signs were posted to inform non-residents they were unwelcome. On this record, the district court should have granted Krieger's motion for judgment of acquittal on the two counts of criminal trespass. We reverse and remand for entry of an order of dismissal.

**REVERSED AND REMANDED.**