# IN THE COURT OF APPEALS OF IOWA

No. 19-0971
Filed October 7, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICHAEL JAMES JONES,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Clay County, Nancy L. Whittenburg, Judge.

Michael Jones appeals his drug convictions claiming they are not supported by sufficient evidence. **REVERSED AND REMANDED.**

Pamela Wingert of Wingert Law Office, Spirit Lake, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Mullins and Greer, JJ. Carr, S.J. takes no part.

**DOYLE, Presiding Judge.**

A jury found Michael Jones guilty of possession of methamphetamine and marijuana. Jones claims there is insufficient evidence to support the convictions. Finding insufficient evidence, we reverse and remand.

The following evidence was presented to the jury. One cold December evening, Jones was called by a friend (known to be a methamphetamine user by law enforcement) who asked that he pull a car out of a ditch with his four-wheel-drive truck. Jones drove to the site. He pulled onto the shoulder, parked, turned on the truck's four-way hazard lights, got out of the truck with a flashlight, and walked into the ditch towards the abandoned car. Someone else had already picked up the car's driver and occupant. Clay County Deputy Sheriff Josh Long was in his patrol car about a mile away when he observed Jones pull off the highway and turn on his hazard lights. The deputy drove over to investigate. As he approached, he noticed a car in the ditch and someone in the ditch shining a flashlight. He turned on his emergency lights as he pulled up behind Jones's truck. At that point Jones was walking out of the ditch towards his truck. Jones went in front of his truck, rounded the driver's side, and approached the deputy's car. The deputy asked what happened. Jones "stated he was contacted by a friend to have the vehicle removed since it was in the ditch. The vehicle had struck a deer, and the driver had left with a child to get the child into a warm building or out of the car. And that's why he was there." The deputy looked at the car in the ditch and then went with Jones to look at the dead deer. As they walked back towards their vehicles, the deputy asked Jones if he had a driver's license. Jones said he did and went to his truck to retrieve it. Meanwhile the deputy noticed a black

drawstring bag on the ground under the front bumper of Jones's truck, about a foot to a foot-and-a-half in front of the front passenger tire. The bag was not cinched all the way shut and the deputy observed what he thought to be a methamphetamine pipe. He called for back-up, and Deputy Spencer Taylor arrived on the scene soon after. Deputy Long showed Jones the bag on the ground and asked if he knew anything about it. Jones denied any knowledge of it. The deputy asked what was in the bag and Jones replied, "I don't know. Probably nothing good." Deputy Taylor picked up the bag and started going through it. The deputies observed what they believed to be a methamphetamine pipe. Jones was then detained and placed in the patrol car, and the bag was searched. The bag contained what was later found to be over 7.5 grams of methamphetamine worth about $800 and a small amount of marijuana. Most of the meth was found in seven small baggies. Some meth was found in a false battery with a screw-on lid. Among other things found in the bag were a Hy-Vee Fuel Saver key ring card (later found to be owned by an individual known to law enforcement as a methamphetamine user and Facebook friend of Jones), a dry scrap of paper with a number written on it, and a marijuana pipe. Given its fairly clean condition, and considering "it was sitting at the side of the road that cars go by at 55 miles per hour," and that the paper inside the bag was dry, and "it didn't seem like anything was damaged due to water in the bag, as well," Deputy Long guessed the bag had not been on the roadside long—that it appeared to have been recently placed there. The gravel shoulder was still damp from a previous day's rain. He opined it had not been there for days but could have been there for minutes or hours or possibly longer. The deputies also found a key ring with two keys and a Hy-Vee Fuel Saver key

ring card on the shoulder about ten to fifteen feet in front of Jones's truck. The fuel saver card was later determined to belong to a person connected with the car in the ditch. The deputies did a drug swipe of Jones's driver's license and two $100 dollar bills from his wallet. They tested positive for methamphetamine.

Jones was arrested and taken to the Clay County Jail. By amended trial information, Jones was charged with Possession with Intent to Deliver Methamphetamine, more than five grams but less than five kilograms, a class "B" felony, in violation of Iowa Code sections 124.401(1)(b)(7) and 124.413 (2016), and of Possession of Marijuana, a serious misdemeanor, in violation of Iowa Code section 124.401(5). At trial, the State presented the evidence recited above. The State argued Jones dropped the bag containing drugs in front of his truck when he saw the deputy approaching. The State also offered testimony that the seven baggies of meth were in quantities bought by drug users, the individual packaging was consistent with selling meth, and the meth was worth $800. Jones argued the bag and the drugs were not his. A jury found Jones guilty as charged. He was sentenced to an indeterminate twenty-five-year term of imprisonment for the methamphetamine offense and 180 days for the marijuana offense. Jones appeals claiming there is insufficient evidence to support his convictions. He requests his convictions be vacated and the case remanded for a new trial.[1]

---

[1] If the evidence is insufficient to sustain a conviction, double-jeopardy principles prohibit a retrial and require remanding to dismiss the charge. *See State v. Kern,* 831 N.W.2d 149, 158 (Iowa 2013); *State v. Dullard,* 668 N.W.2d 585, 597 (Iowa 2003); *see also State v. Rooney,* 862 N.W.2d 367, 378 (Iowa 2015) (remanding the matter to dismiss the charge based on insufficiency of the evidence); *State v. Brubaker,* 805 N.W.2d 164, 167 (Iowa 2011) (same).

"Sufficiency of evidence claims are reviewed for correction of errors at law, and we will uphold a verdict if substantial evidence supports it." *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017). "Evidence is substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (internal quotation marks and citation omitted). All evidence is considered, not just the evidence supporting the verdict. *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017). "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010) (quoting *Raper v. State*, 688 N.W.2d 29, 36 (Iowa 2004)). "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury is free to reject certain evidence, and credit other evidence." *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (citation omitted).

On appeal, Jones argues the evidence was insufficient to find that he constructively possessed the drugs found on the shoulder of the road. He asserts there is a complete lack of evidence linking him to the drugs. He acknowledges the drugs were found in a remote location but points out that others had been present at the place in the recent past—both the motorist who drove into the ditch and the person whom rescued her. He suggests that it is "as reasonable to conclude that one of the others who had been there misplaced their drugs as it was to suggest that Jones had been in possession of the drugs." "While it was just as likely that someone else had discarded the black bag as it was that Jones had

done so, Jones had the misfortune of being present when deputies located the bag containing contraband. Unable to find a more suitable scapegoat, they accused Jones of possession of the contraband inside."

The State counters that Jones's close proximity to the bag containing the drugs supported finding possession. The State points out that the deputy testified that although he did not initially see it when Jones walked out of the ditch and around the front of his truck, after viewing the dash cam video, the deputy noticed Jones "kind of looked back" at the front of his truck as he rounded the front driver's side of the truck headed towards the deputy's car. The State suggests Jones was looking at the bag and that this buttressed a finding of possession. Secondly, it argues the condition of the bag and its contents showed it had not been on the roadside for long. The State notes that the bag was clean even though it had rained the day before and the gravel shoulder was still damp when the bag was found. The bag was dry, as was the piece of paper inside. The glass contents were not broken, suggesting the bag was not thrown by a passing motorist. Third, the fuel saver card found in the bag belonged to a Facebook friend of Jones, suggesting the jury could eliminate the possibility the bag belonged to anyone other than Jones or his friend. Fourth, when asked what was in the bag Jones answered "[p]robably nothing good," suggesting the jury could infer the answer showed Jones knew what was in the bag because drugs and drug paraphernalia are illegal, therefore "nothing good." Fifth, the meth found on Jones's driver's license and his $100 bills allowed the jury to conclude Jones possessed meth and was free to find he possessed the contents of the bag found near his truck.

Jones replies that the State "stacks speculation upon speculation in order to try to support a theory of possession in this case but speculation does not provide sufficient evidence in possession cases." He cites *State v. Reed*, 875 N.W.2d 693, 711 (Iowa 2016) (Hecht., J., concurring specially) ("[O]ur cautious approach to the doctrine of constructive possession should not recognize a stack of speculative inferences piled one on top of another as substantial evidence . . . .").

"Possession may be actual or constructive." *Id.* at 705 (footnote omitted). Actual possession occurs when the controlled substance is found on the defendant's person. *State v. Atkinson*, 620 N.W.2d 1, 2 (Iowa 2000). Jones did not have actual possession of the drugs because the deputy did not find the controlled substances on his person. We are left to determine whether the Jones had constructive possession.

To establish constructive possession, the evidence must show the defendant "has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it." *Reed*, 875 N.W.2d at 705 (citation omitted). The drugs were found on the shoulder of a public roadway. Other persons had been on the scene not long before Jones got there. Under the circumstances, we view the situation like a jointly occupied structure or vehicle. We will not recognize an inference creating a rebuttable presumption of possession involving vehicles when it has been established that multiple individuals had equal access to the vehicle. *See State v. Kemp*, 688 N.W.2d 785, 788 (Iowa 2004). "However, a determination of constructive possession still requires we draw some inferences based on the facts of the case." *State v. Dewitt*,

811 N.W.2d 460, 475 (Iowa 2012). In determining whether the defendant possessed contraband discovered in jointly occupied structures, there are several nonexclusive factors to consider:

> (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.

*Reed*, 875 N.W.2d at 706 (citation omitted). "Even if some of these facts are present, we are still required to determine whether all of the facts and circumstances . . . allow a reasonable inference that the defendant knew of the drugs' presence and had control and dominion over the contraband." *State v. Cashen*, 666 N.W.2d 566, 571 (Iowa 2003). A defendant's mere proximity to contraband cannot support a finding of constructive possession. *Reed*, 875 N.W.2d at 693. Finally, "[i]nferences that do no more 'than create speculation, suspicion, or conjecture' do not create a fair inference of guilt." *State v. Truesdell*, 679 N.W.2d 611, 618 (Iowa 2004) (quoting *State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002)).

Both parties make reasonable arguments. But the State bears the burden of proof, and its strongest piece of evidence is Jones's proximity to the drugs when he walked in front of his truck headed for the deputy's car. That Jones dropped the bag as the deputy approached must be inferred. And Jones's mere proximity to the drugs alone cannot support a finding of constructive possession. *See id.* Jones made no incriminating statements. He made no incriminating actions upon the deputies' discovery of the drugs near his truck. No fingerprints were taken from

the bag or its contents. Other circumstances are that Jones glanced back while in front of his truck as he walked towards the deputy's car. Although not clear on the dash cam video, it appears Jones could be looking back at the abandoned car. That Jones was looking back at his drugs and acting suspiciously while doing so must be inferred. The bag appeared to not have been on the roadside shoulder for long. Since others were on the scene not too long before Jones arrived, it must be inferred Jones was the one who dropped the bag on the shoulder, not the others previously on the scene—the ones that dropped the set of keys. It appeared the bag had not been tossed out by a passing motorist. While that may eliminate passing motorists, it must be inferred Jones dropped the bag not the others previously on the scene. Jones answered "Probably nothing good" when quizzed about the bag's contents. That this was an acknowledgment he knew there were drugs in the bag must be inferred. Under the circumstances, the answer seems reasonable. A reasonable person could conclude that the deputies would not be asking about the contents of the bag unless they suspected contraband. And if the meth pipe was readily observable to the deputies, it was to Jones. The Hy-Vee fuel saver card found in the bag was owned by a Facebook friend of Jones. One could reasonably deduce from this fact that the bag did not belong to anyone other than the card holder or Jones. Traces of meth were found on Jones's driver's license and bills from his wallet. From this one may reasonably infer Jones handled or used meth, but it in no way connects Jones to the meth found on the roadside. There is no direct evidence tying Jones to the drugs, and no one inference establishes Jones had knew of the drugs and had control and dominion over them. "[W]hen two reasonable inferences can be drawn from a piece of

evidence, . . . such evidence only gives rise to a suspicion, and, without additional evidence, is insufficient to support guilt." *Id.* at 618–19; *accord State v. Schurman*, 205 N.W.2d 732, 734 (Iowa 1973) ("[T]he circumstances must be entirely consistent with defendant's guilt, [and] wholly inconsistent with any rational hypothesis of his innocence . . . .").

It takes a stack of inferences to conclude that Jones knew of the presence of the controlled substances and had the authority or right to maintain control of them. Alternative inferences can be drawn from the pieces of evidence. There is no substantive proof of guilt—"some fact proven which tends to establish the substantive facts upon which the state relies for conviction." *State v. Keyser*, 130 N.W.2d 701, 704 (Iowa 1964). The evidence presented to the jury only supports a suspicion of Jones's guilt. The circumstances are not wholly inconsistent with any rational hypothesis of his innocence. So we are not satisfied this evidence was sufficient for the jury to reasonably infer that Jones knew the drugs were present and exercised control and dominion over them.

Because the evidence could not support the jury's verdict, we reverse the judgment and sentence entered following Jones's convictions and remand the case to the district court to vacate Jones's convictions and dismiss the charges.

**REVERSED AND REMANDED.**